THE PHŒNIX INSURANCE CO. v. ALLEN.

_____

## The Phœnix Insurance Company v. John Allen.

A note payable in "*current funds*," in the absence of all evidence showing that any thing else is current at the place of payment, must be regarded as payable only in such funds as are current by law.

Where one receives a draft as conditional payment of a debt due him, his right of action upon the debt is suspended until the draft is properly presented for payment and payment refused.

By accepting a draft as conditional payment, the creditor accepts the duty of doing everything with respect thereto which is necessary to fix the liability of the parties. And the *onus* is upon him to show that he has performed that duty when he seeks to recover upon the original cause of action.

A draft payable at sight should be presented for payment within a reasonable time; and a Court can not, as matter of law, say that any delay is reasonable beyond that which is required in the ordinary course of business, without special inconvenience to the holder; or by the special circumstances of the particular case.

A draft drawn at Cincinnati, May 2d, 1861, on persons in Chicago, payable at sight, was received at Detroit May 4th, but not transmitted for presentment until the 25th of that month. There was a daily mail between Detroit and Chicago, occupying from twelve to fourteen hours in its passage. No evidence was given to explain or excuse this delay, and it was held that, without any evidence bearing upon the point, it was error to submit to the jury the question whether the draft was presented for payment in a reasonable time.

Held also, that counsel should not be permitted to read to the jury and comment upon cases found in the books of reports, upon the question, submitted to them as one of fact, whether the draft was presented for payment in a reasonable time.

*Heard May 29th.   Decided July 17th.*

Error to Wayne Circuit. The case is sufficiently stated in the opinion.

*Douglass & Andrews*, for plaintiff in error:

1. The Court erred in permitting counsel for the plaintiff below to read and comment upon, to the jury, cases from the books of reports touching the question of diligence.

If the question of whether due diligence had been used was one of law merely, for the Court, then the counsel had no right to read such cases to the jury. If it was a question of fact for the jury, then what due diligence required should have been shown by legal evidence. Decisions of courts cannot be tortured into evidence of facts for the consideration of a jury. It is a mere quibble to say that such cases

are read as part of the argument, and as illustrations merely. The jury have no more right to listen to decisions by other courts or other juries upon the question of fact before them than to affidavits of bankers.

2. Stephens & Beatty kept the draft in their hands twenty-one days before transmitting it. The sole question to be decided was whether this period of delay was a reasonable one. Who should have decided the question, the jury or the Court? No evidence was before the jury authorizing them to find that any delay beyond the time actually necessary for the transmission of the draft was reasonable, and if they found under the charge that the above period of twenty-one days was reasonable, it must have been, not upon the evidence, but from the light of their own inner consciousness. This cannot be the way in which the law requires that such questions be settled. If a reasonable time in any case includes more time than is abundantly sufficient to place the draft in course of transmission, then such further time must be determined by some rule of law. It cannot be that it is in all cases absolutely impossible to determine beforehand a point so essential to the rights of parties, and that those rights can be ascertained in each case only by asking *ex post facto* counsel of the whims of a petit jury. Uniformity of decision would be unattainable under such a system. The jury in the present case must be supposed to have found the delay reasonable. What assurance have we that the jury that shall pass upon the same question when we sue the drawer of this draft will come to the same conclusion? Questions of due diligence, probable cause, and the like, are always called and treated by the courts as questions of law, or of mixed fact and law, and in all such cases, the facts being ascertained, the only remaining question is for the court. It is absurd to say that a question is one of mixed fact and law, and then to leave the whole question for the jury, and reserve nothing for the court: — 1 *Greenl. Ev.* § 49 *n*; 2

*Ibid.* §§ 186, 454; 3 *Comst.* 274; 1 *Pet.* 583; 9 *Ibid.* 46; 15 *Ibid.* 173; 2 *Wend.* 427–8; 1 *Ibid.* 352; 7 *Cow.* 709; 7 *Ibid.* 717; 1 *Metc.* (*Ky.*) 95; 1 *Head,* 616, 624; 29 *Mo.* 203; 2 *Hilt.* 272; 21 *Wend.* 643; 2 *Caines,* 371; 27 *Barb.* 227–8; 9 *Ind.* 577; 14 *Me.* 57; 22 *Pick.* 555; 5 *Jones* (*L.*) 246; 3 *Ibid.* 47; 1 *Bosw.* 326; 20 *Mo.* 64; 19 *Ala.* 612; 7 *Gray,* 220; 28 *E. L. & Eq.* 93; 12 *Met.* 212; 16 *Md.* 170; 2 *Hill,* 592; *Busbee* (*L.*) 393; *Ibid.* 394; 13 *Ired.* 253; 7 *Ired.* 283–5; 9 *Gill,* 355; 4 *Johns.* 389; 1 *B. & P.* 389; 11 *M. & W.* 214, 217; 2 *Q. B.* 191.

The delay in the presentment of the draft was unreasonable, and the defendant was discharged from its indorsement, and from the original debt:— 2 *Hilt.* 272; 7 *Cow.* 713; 4 *M. & W.* 721; 17 *Wend.* 368; 20 *Ibid.* 321; 7 *Blackf.* 367; 16 *East,* 248; 2 *Hill,* 430–2; 20 *Wend.* 192; 23 *N. Y.* 28; 34 *Barb.* 249; 10 *Wend.* 304; 13 *Ibid.* 135; *Ibid.* 549.

The case is not affected by the draft in question not being negotiable. There is no reason for such a distinction, and no case sustains it. The draft, though not technically negotiable, is payable in currency recognized and treated as money by all persons in the community, and for all purposes affecting this question having the same qualities. Every reason for requiring diligence in the presentment of negotiable paper applies with equal if not greater force to this:—9 *Wend.* 122; 2 *Wils.* 353; 23 *Wend.* 348; 2 *Am. Lead. Cas.* 269.

The rule for which we contend arises from the nature of the indorser's undertaking, and does not, like the negotiability of paper, depend upon technical conformity to a definition. We conceive that an instrument drawn for an uncertain sum, or payable upon a contingency, would not, for this, be excluded from the operation of the rule, though it certainly would not be a bill of exchange. The reason of the rule would apply with full force to such a case, and to the one before us.

*C. I. Walker* and *G. V. N. Lothrop*, for defendant in error.

The important question in the case is, whether the question of due diligence in the presentation of the last order or draft, the facts being undisputed, is one of *law* for the Court, or one of *fact* for the jury.

That the question of reasonable time and reasonable diligence, is, in general, a question of fact to be submitted to the jury under a proper charge, there can be no doubt. This arises from the nature of the questions, and is abundantly supported by authorities:—1 *Greenl. Ev.* § 49 *and n*; 4 *B. & Ald.* 202; 2 *A. & E.* 256; 10 *Q. B.* 69; 5 *E. & B.* 764; 6 *Cranch*, 268; 5 *Gray*, 432; *Day v. Owen*, 5 *Mich.* 520; *Maher v. The People*, 10 *Mich.* 212.

On the other hand, it will be freely admitted that the question of time within which the notice of the dishonor of negotiable paper shall be given, is, in many cases, and perhaps generally, a pure question of law, growing out of settled usage and a series of adjudications.

The reason and the limitations of this rule are pretty clearly stated in the case in which the rule itself had its origin.

In *Tindal v. Brown*, 1 *T. R.* 168, Lord Mansfield said: "What is reasonable notice is partly a question of fact and partly a question of law. It may depend in some measure on facts, such as the distance at which parties live from each other, the course of the post, etc. But *wherever a rule can be laid down* with respect to this reasonableness, that should be decided by the Court and adhered to by every one for the sake of certainty."

There can be no doubt that, originally, the question of reasonable time and due diligence, whether applied to the presentation of negotiable paper, or to notice of its dishonor, was one purely of fact, to be decided by the jury. The earliest decision found upon the point is by Lord Chief Justice Holt, and that has been either expressly or

practically followed, as to the question of reasonable time, by a very large number of English cases, both previous and subsequent to the case of *Tindal v. Brown*, which was decided in 1786: — *Lee v. Lewis, Skinner*, 410; *Same case*, 1 *Salk.* 132; 1 *Ld. Raym.* 743; 1 *Strange*, 508; 2 *Strange*, 910; 1 *W. Blk.* 1; *Doug.* 514; 2 *H. Blk.* 561; 6 *East*, 13, *note*; 6 *East*, 15, *note*; 7 *Taunt.* 160; *Ibid.* 397; 1 *M. & M.* 133; 9 *Bing.* 416; 4 *M. & W.* 721; 28 *E. L. & Eq.* 86.

In accordance with these are many American decisions: — 1 *Dall.* 252; 7 *S. & R.* 324; 18 *Penn.* 362; 2 *McCord*, 388; 2 *Rich.* 67; 3 *Rich.* 71; 9 *Ala.* 160; 13 *Mass.* 138; 4 *Mason*, 345; 5 *Mason*, 118.

It is true that there are some English cases, and many American cases, that lay down the doctrine in very gen-eral terms, that the question of reasonable time and due diligence, in relation to negotiable paper, where the facts are not disputed, is a question of law for the Court. But a careful examination of these cases, we apprehend, will lead to the conclusion that this rule is applicable only to that class of cases where, in the language of Lord Mans-field, "a rule can be laid down." To this class belong,

1st. Those cases which require that a note or bill, payable at a certain time and place, shall, in general, be presented at such time and place, or the indorser is dis-charged.

2d. Those cases which require a notice of dishonor to be given on the day or the day after the fact of dishonor, or by the next mail.

3d. Those cases that require notice, when parties reside in the same town or city, to be sent otherwise than through the post office.

In these cases, and some others, a certain rule can be established, and such rule becomes a convenient and important guide to business men, and to which they adapt their business habits.

But from the very nature of things, it is impossible to fix any certain rule in relation to the presentation of bills of exchange, payable on demand, or at sight. Reasonable time depends upon such a variety of circumstances, so many. of which are peculiar to each case; as upon the distance from each other of the parties, the course of trade, the course of the mails, the facilities of intercourse, the rates 'of exchange, the number of hands through which the paper passes, the accidental delays attending its transmission, that it is entirely impossible to lay down any rule in relation to the matter.—1 *Pars. Notes*, 339, 343.

It seems utterly absurd to say that it is a question of law, when no lawyer, however wise or learned, can, in advance, safely advise his client what the rule of law on the question is.

[Counsel further argued that, even if this was to be considered as . a question of law, and if the order in question was negotiable, it was presented within a reasonble time, and that neither drawer nor indorser were discharged by the delay.]

It was not objectionable for the counsel to read from the reports for the purposes stated in the record.—1 *Ohio St.* 286; 9 *C. & P.* 362.

CHRISTIANCY J.:

This was an action of assumpsit brought by Allen, the plaintiff below, against the company, to recover the amount of a loss by fire under a policy issued by the company to Allen.

The declaration contained counts upon the policy, and the common counts. The plea was the general issue. It appeared from the evidence introduced by the plaintiff (and of these facts there was no dispute), that on the 20th day of April, 1861, the loss under the policy had been adjusted by compromise between Allen and the company (the latter acting through one Holden, their agent,

having power to adjust losses), at the sum of eleven hundred and six 25-100 dollars, which was agreed by said agent to be paid by a draft drawn by him on the general agents of the Phœnix Company at Cincinnati "payable in Chicago exchange." The draft for the amount was so drawn on the same day, upon R. H. & H. M. Magill, general agents of the company at Cincinnati, payable to the order of Allen at one day's sight. This draft was indorsed by Allen to Stephens & Beatty, of Detroit, for whose use the action was brought; the plaintiff, however, retaining some interest in it (but what, did not appear). Stephens & Beatty indorsed and transmitted this draft to Harrison & Hooper, their agents in Cincinnati, for presentment and demand of payment, who duly presented it to the drawees, on the 2nd of May, 1861, and received and accepted from the drawees, as and for a compliance with said draft or order, a bill of exchange drawn by J. H. Bussing & Co., bankers at Cincinnati, upon Hoffman & Gelpecke, bankers at Chicago, and indorsed by said R. H. & H. M. Magill, general agents as aforesaid. This last draft was in the following words and figures :

"$1,106 25.   Walnut Street Bank: Cincinnati, May 2, 1861.

Pay to the order of R. H. & H. M. Magill, general agents, eleven hundred and six 25-100 dollars current funds.

G. H. Bussing & Co.

To Hoffman & Gelpecke, Chicago, Ill."

. This draft was received by Stephens & Beatty, at Detroit, from their agents in Cincinnati, on the 4th day of May, 1861, and on the 25th day of the same month they transmitted it by mail to their agents in Chicago, for presentment and demand of payment; and, on the 29th day of the same month, it was duly presented to Hoffman & Gelpecke, the drawees, and payment demanded, which payment was refused ; and it was thereupon protested for non-payment, and due notice thereof given.

It was admitted there were daily mails between Detroit

and Cincinnati, between Detroit and Chicago, and between Detroit and Grand Rapids, and that the several times occupied in the transmission of the mails between these several points were as follows: Between Detroit and Cincinnati, from twelve to twenty-four hours; between Detroit and Chicago, from twelve to fourteen hours, and between Detroit and Grand Rapids, less than twelve hours. There was no other evidence touching the question of diligence in presenting the draft for payment.

The draft was offered in evidence by the plaintiff, under the common counts, but rejected by the Court on the ground that it was not negotiable, because payable in current funds, and not in cash. As the plaintiff does not complain of the judgment, and we think the draft was properly excluded for another reason, it is only important to notice this point for the bearing it may be supposed to have upon another question in the cause. But in the absence of all evidence that anything else than cash was treated as current funds in Chicago, we do not see how the Court could assume judicially to know the fact or presume it; until this should be made to appear, the current funds in which it was made payable, should, we think, be held to be such funds only as were current by law. We must therefore treat this draft as a negotiable bill of exchange payable in money. It does not appear to have been obtained for the purposes of exchange; that is, for the purpose of transmitting funds to Chicago; but it is clear that it was received in payment of the first draft or order drawn by Holden and indorsed to Stephens & Beatty, or, in other words, in payment of the sum due the plaintiff for his loss under the policy. Whether received in absolute or conditional payment, was a question for the jury upon the evidence. Had they found it was received as absolute payment, they could not have found for the plaintiff: as his remedy would then clearly have been confined to the draft itself, which the plaintiff was not allowed

to introduce in evidence. It is only therefore in respect to its reception as conditional payment that we are to consider the question of the plaintiff's right to sue for the original indebtedness, and the question of diligence in presenting the draft for payment. Its reception as conditional payment would operate as a suspension of the plaintiff's original right of action till the draft should be properly presented for payment, and such payment was refused (*See authorities cited* 2 *Am. Lead Cas.* 182). And we think the plaintiff, by such acceptance, must also be understood to have accepted the duty of doing everything with respect to the paper which was necessary to fix the liability of the drawer and indorsers, and the onus of proving that he has performed this duty when he seeks to recover upon the original cause of action for which the paper was received:

In *Jennison v. Parker*, 7 *Mich.* 355, it was held by a majority of this Court that where a draft drawn by a third person was indorsed by the debtor, and by him sent to the creditor to be applied when paid, the creditor made the paper his own and could not sue upon the original debt if he neglected the steps necessary to hold the debtor liable as indorser. We see no reason for departing from the rule there laid down. We think the same reasons apply here, not only with reference to the indorser, but with at least equal force to the drawers also; since, if the drawers have been discharged by the neglect of the holder to present for payment in due time, the indorsers (who, so far as the present question is concerned, may be considered as the company for whom they acted) would lose their remedy over upon the drawers; for there is nothing in the case to show that the drawers could be held liable without due presentment.

In 2 *Am. Lead Cases*, *p.* 183, upon a careful review of the cases it is laid down as a general principle of the law merchant that, "a plea that the plaintiff has taken

the note or bill of a third person on account of the cause of action, is a sufficient bar to the suit, which can only be removed by showing that the ordinary course of business has been pursued with reference to the security thus taken, and that it has, notwithstanding, proved inadequate as a means of payment." As a general rule we think this is just and equitable to all parties, though we think the same special circumstances affecting the time of presentment and notice might be shown as in cases between indorser and indorsee. Thus understood, the rule is substantially the same as that which requires presentment to be made within a reasonable time, having reference to the ordinary course of business, and the circumstances of each particular case. The law upon this subject, as a general rule, adapts itself to the ordinary course of business, or, more properly speaking, the ordinary course of business constitutes the general rule of law. When the ordinary course of business has established a rule as to time of presentment, which the law has recognized, courts are bound judicially to notice it without proof, as in the case of bills payable at a specified day or a certain number of days after date: and doubtless the ordinary course of business may, to some extent, be judicially noticed in other cases. But where the law has adopted no rule as to time of presentment, except that it shall be within a reasonable time, as in the case of bills payable at sight, like the present; the court can not, without overlooking the objects for which such presentment and notice of non-payment are required, say, as matter of law, that any delay is reasonable beyond that which may be fairly required in the ordinary course of business without special inconvenience to the holder; or by the special circumstances of the particular case. And in a case like the present, where the paper does not appear to have been obtained for mere purposes of exchange, but in payment of a precedent debt; and was not put in circulation, but detained by the plain-

tiff for twenty - one days before it was transmitted for presentment; if we can not take judicial notice that this delay was greater than required by any considerations of necessity or convenience in the usual course of business, we certainly can not, without evidence upon the point, determine, as matter of law, that this length of time *was* required by any such considerations, or authorized by any usage or course of business which we can judicially notice without proof. If there was any thing in the special circumstances of the case to require it, or to excuse the delay, those circumstances should have been proved. But no such evidence was given or offered. Nothing whatever was shown to excuse or explain the delay, or to show why the paper might not, with equal convenience to the holder or any other person, have been sent by the first, or next succeeding mail. There was, therefore, no evidence before the jury tending to show that the time was reasonable. The time—the unexplained delay of twenty-one days —was shown. But there was no evidence of any usage or course of business, nor any special circumstances connected with the particular case, from which the jury could be authorized to draw any inference that the time was reasonable. And the burden of proof upon this point rested upon the plaintiff. So far as the jury are to pass upon the question of reasonable time, their verdict must be based upon evidence before them. If from the naked fact of the length of time, the jury are to determine its reasonableness without any evidence bearing upon the point, they must necessarily determine it as a question purely of law: and this is not within their province. The Court therefore erred in submitting the question to the jury.

Had there been evidence upon the point, the questions might have arisen, which were so fully and ably discussed by the counsel, whether the reasonableness of the time was a question of fact for the jury, or — the facts being undisputed — a question of law for the Court, or, if dis-

puted, of mixed law and fact, to be decided by the jury under the charge of the Court upon the law. But the plaintiff, upon whom the burden of proof rested, having failed to produce any evidence tending to show that the time was reasonable, and there being no such evidence in the case, these questions are not properly before us, and we shall not enter upon their discussion. But whatever view may be taken of these questions, we can see no ground on which the counsel for the plaintiff could be allowed to read to the jury, and to comment upon, decided cases upon the question, found in the books of reports. So far as the question was one of law, these cases and the arguments upon them were for the consideration of the Court only: so far as it was a question of fact, it was to be decided by the jury upon the facts given in evidence in the regular course of the trial: — See *Darby v. Ouseley*, 36 *E. L. & E.* 519; and the finding of courts or juries in other similar cases would be wholly inadmissible as evidence in any stage of the trial.

As there was no evidence tending to show the time to be reasonable, and the Court held the question to be one of fact for the jury, and permitted the reported cases to be read to them against the objection of defendant's counsel, the jury must naturally have inferred that they were at liberty to consider those decided cases as evidence upon which they had a right to base their verdict. The cases could only be properly read to, or considered by the jury upon the hypothesis that *they* were to decide the question *as one of law:* and such, in this case, must have been the result, so far as their verdict may have been in any way influenced by the cases and the argument based upon them.

The judgment must be reversed, with costs, and a new trial granted.

MANNING and CAMPBELL JJ. concurred.

MARTIN CH. J. did not sit in this case.