CHARLES BALDWIN'S APPEAL FROM PROBATE.

Upon an appeal from a probate decree disallowing a will, the question being whether the testatrix was of sound mind, the party upholding the will was allowed by the court, against objection taken, to read to the jury from books cases decided in other states and in England, for the purpose of showing that the facts set forth in such cases were not inconsistent with the soundness of mind necessary to the making of a valid will. Held to be error, and a ground for granting a new trial.

APPEAL from a decree of a probate court disallowing the will of Sarah Baldwin; taken to the Superior Court in New Haven County. The appellant was a devisee and legatee under the will. The case was tried to the jury, on the issue of the soundness or unsoundness of the mind of the testatrix, before *Sanford, J.*

After the evidence on both sides had been introduced, one of the counsel for the appellant, while making the opening argument, proposed to read to the jury from the decisions of courts in this country and in England, where wills had been sustained notwithstanding the objections which had been made to them, founded upon the alleged testamentary incapacity of their makers, for the purpose of showing that the facts set forth in such cases were not inconsistent with the legal signification of soundness of mind, as applied to the making of wills. The counsel for the appellee objected to such reading, on the ground that it would divert the attention of the jury from the case on trial, and that the jury had no right to be influenced by what other courts or juries had done or decided in any other case. The court overruled the objection, and allowed the cases to be read.

The jury having returned a verdict for the appellant, sustaining the will, the appellee moved for a new trial for error in the above ruling of the court. Other questions were made, which it is not necessary to state, as they were not considered by the court.

*C. Ives*, in support of the motion.

1. These cases were allowed to be read to the jury, (so

far as counsel for the appellant deemed it expedient or beneficial to his client to read them,) for the purpose of informing the jury what our law is in regard to testamentary capacity, and of assuring them by means of these cases, and especially by the aid of *Lee* v. *Lee*, 4 McCord, 183, that in Connecticut the law is so that one of more unsound mind than most of the patients in our asylums for the insane may make a valid disposition of his estate by will. Such cases, and the question of law in regard to testamentary capacity, are exclusively for the court. The jury have nothing to do with them.

2. But if it shall be claimed that the appellant's counsel read from these cases for the purpose of aiding the jury in coming to a conclusion in regard to the fact in issue, the objection to the reading will apply with increased force, for the jury had no right to consider any facts not proved and established by the testimony of sworn witnesses legitimately introduced before them. They had no right to be influenced by what other courts and juries may have decided in other cases in other jurisdictions.

3. If it shall be claimed that the question of mental capacity was one of law and fact combined, the objection to reading books to the jury still remains, for the jury should get all their law from the court, and all the facts from sworn testimony produced upon the trial. *Commonwealth* v. *Wilson*, 1 Gray, 337 ; *Washburn* v. *Cuddihy*, 8 id., 430 ; *Ashworth* v. *Kittridge*, 12 Cush., 194; *Phœnix Ins. Co.* v. *Allen*, 11 Mich., 501; *People* v. *Anderson*, 44 Cal., 65; *Carter* v. *The State*, 2 Carter (Ind.), 617; *Darby* v. *Ouseley*, 36 Eng. L. & Eq. R., 526; 1 Redf. on Wills, 141 ; 2 Greenl. Ev., § 440.

*T. E. Doolittle* and *W. C. Robinson*, contra.

There was no error in permitting counsel to read in his argument to the jury from decided cases. The question was —Was the testatrix of sound and disposing mind? This was a question partly of law, partly of fact. What mental capacity constitutes a sound and disposing mind is a question of law. Whether the testatrix had that mental capacity is a question of fact. It was claimed by the appellee that the

testatrix was peculiar in her speech and habits, and that this peculiarity proved such want of mental capacity as was inconsistent with a sound and disposing mind. The appellant admitted the existence of some of these peculiarities and denied others, and claimed that whatever mental incapacity they indicated was not inconsistent with a sound and disposing mind. In arguing the cause in the presence of the court and jury, upon the question as to what degree of mental capacity is legally sufficient to constitute a sound mind, counsel cited several cases, among which were *Dunham's Appeal from Probate*, 27 Conn., 192, *Banks* v. *Goodfellow*, Law Reps. 5 Queen's Bench Cases, 549, and *Lee* v. *Lee*, 4 McCord, 183. From the two latter cases counsel read at length. These were both motions for a new trial for a verdict against evidence, on the ground that the mental incapacity shown by the evidence was inconsistent with a sound and disposing mind. In the first case, the Court of Queen's Bench held that insane delusions, if not connected with the subject of testamentary disposition, are not inconsistent with a sound mind. In the South Carolina case, the court held that an eccentric disposition and a belief in witchcraft, were not inconsistent with a sound and disposing mind. It was as proper and necessary to read authorities of this kind upon a question of insanity as upon any other question of mixed law and fact, such as negligence. This very case in McCord, is cited in Redfield's Leading Cases on Wills, 271, as a decisive authority on the legal question as to the compatibility of great eccentricity with a sound mind. The objection of the appellee was taken, not to what was actually read, or to the reading of the cases in the presence of the jury, but to the reading of any cases whatever, for the purpose aforesaid. He must stand on his objection as made, and unless he has been wrongfully injured by the diverting of the attention of the jury, or by the jury being illegally influenced by what other courts or juries had done, he has no ground of error.

CARPENTER, J. On one point in this case we feel constrained to grant a new trial. Some of the other questions

discussed are not free from doubt; but in respect to them we express no opinion, as they will not necessarily arise upon another trial.

The counsel for the appellant were permitted, against the objection of the appellee, to read to the jury, from books, cases decided in other states and in England, "for the purpose," as it is stated in the motion, "of showing that the facts as set forth in such cases were not inconsistent with the legal signification of 'soundness of mind,' as applied to the making of wills."

The duties of the court and of the jury in the trial of civil causes are distinct and clearly defined. It is the duty of the court to declare the law to the jury; and that carries with it a corresponding obligation on the part of the jury to receive the law only from the court. They have no right to receive the law from books, nor from counsel, nor are they permitted to act upon their own notions of law, but the law as laid down by the court is to be the law of the case for them.

It is also the duty of the court to decide what evidence may and what may not go to the jury; and the law declares that all evidence submitted to the jury shall be under the sanction of an oath. It is the duty of the jury therefore to hear and consider only such evidence as the court permits to be given, and such only as is under oath.

Whether the matter read to the jury be regarded as matter of law, as a statement of facts, or as a mixture of law and fact, it is equally objectionable. If as matter of law, then the jury were receiving the law, which was to guide their deliberations, from an unauthorized and dangerous source. If as matter of fact, then the jury were listening to evidence which was not only irrelevant, and could have no legitimate bearing upon the question before them, but it was admitted after the evidence was closed and the argument commenced, and without any legal sanction whatever, not even being subjected to the test of a cross-examination. If regarded as a mixture of law and fact, then all the objections which may be urged against it when viewed as law or fact, apply in full force. In whatever aspect viewed its tendency was bad, diverting the

minds of the jury from the real question they were to try, and the legitimate and proper evidence in the case.

This is not the ordinary case of reading an authority to the court upon a question of law in the presence of the jury, as the counsel for the appellant seems to intimate. The motion shows that it was proposed to read the cases *to the jury.* The reading was objected to "on the ground that it would divert the attention of the jury from the case on trial, and that the jury had no right to be influenced by what other courts or juries had done or decided in any other case." The court, in overruling this objection, must have caused the jury to understand that it was proper for them to consider the facts stated in those cases, and the action of the courts and juries thereon, in connection with the evidence in this case in making up their verdict, and they may have been, and probably were, influenced thereby. Whatever effect they had, whether much or little, was improper and tended to prejudice the appellee.

The view we take of this question is in harmony with the law as laid down elsewhere. *Ashworth* v. *Kittridge*, 12 Cush., 193; *Commonwealth* v. *Wilson*, 3 Gray, 337; *Washburn* v. *Cuddihy*, 8 Gray, 430; *Phœnix Ins. Co.* v. *Allen*, 11 Mich., 501; *People* v. *Anderson*, 44 Cal., 65; *Carter* v. *The State*, 2 Carter's Ind. R., 617.

We advise a new trial.

In this opinion the other judges concurred.