# CHARLESTON

RAY *v.* CHESAPEAKE & OHIO RAILWAY CO.

Submitted February 22, 1905.     Decided March 7, 1905.

1. RAILROAD COMPANIES—*Injury to Persons on Track—Negligence.*
      A railroad company is liable for damages for injury to any person on its tracks, whether at a public crossing or elsewhere, arising from careless and negligent running of the train.   (p. 334.)

2. DECLARATION—*Defective Count—Demurrer.*
      If one count of a declaration is good, another bad, though there was a demurrer to the declaration and each count, a general verdict will be good, and reversal will not be made on account of the bad count.   (p. 335.)

3. SYLLABUS APPROVED.
      As to reading law in argument to a jury, the syllabus in *Gregory* v. *Ohio River R. Co.*, 37 W. Va. 606, is reaffirmed.   (p. 339.)

4. ARGUMENT OF COUNSEL—*Reading Law to Jury.*
      A court may and should refuse to allow counsel to read law books, either text books or reports, in addressing the jury, if objected to.   (p. 339.)

5. ARGUMENT OF COUNSEL—*Reading Law to Jury—Objection—Error.*
      Reading reports of decisions giving evidence or facts involved in decided cases more or less similar in character, if objected to, should not be allowed, and its allowance, over objection, is reversible error.   (p. 341.)

6. DEDICATION OF STREETS BY USAGE.
      A street in a town, crossing a railroad, dedicated to public use, and used for twenty-five years by the general public, on which the railroad company has for years itself maintained a crossing for vehicles and foot passengers, and erected a whistling post calling for warning signals, and a warning board at the crossing having on it the words, "Look out for locomotive. Railroad Crossing," and

57   333
58   218

57   333
61   273

sometimes worked for repair by town labor, is a public street within the meaning of Code, chapter 54, section 61, though no order of the town council can be produced showing acceptance by the town of such dedication, or the establishment or recognition of the street by the council.   (p. 336.)

Error to Circuit Court, Cabell County.

Action by A. S. Ray, administrator of Annie S. Ray, against the Chesapeake & Ohio Railway Company.   Judgment for plaintiff, and defendant brings error.

*Reversed.*

SIMMS & ENSLOW, for plaintiff in error,

WILLIAMS, SCOTT & LOVETT for defendant in error.

BRANNON, PRESIDENT:

Annie S. Ray, a child of ten years, was struck and killed by a train of the Chesapeake and Ohio railroad while she was crossing the railroad tracks at a street crossing in the town of Milton, and her administrator brought an action in the circuit court of Cabell county against the railroad company, and recovered a verdict and judgment for $2,-900.00 damages.

The company assigns it as error that the demurrer to the declaration was not sustained.   The only question which is here worth considering, or is relied upon by counsel, arises on two of the four counts.   It is urged that those two counts are bad because they show no duty on the part of the company to Annie Ray, since they do not state whether she was a passenger on the train, an employee, a licensee or a trespasser.   Though the first count says that the railroad crosses a public street called Smith street, strangely enough it does not show what the street has to do with the case.   It does not say that the child was struck while passing along the street.   It simply avers that the defendant so carelessly and negligently managed the train that it struck the child. Though it does not say that the child was struck while on the street and crossing the track, as was the case, yet if she was struck anywhere, on the street or elsewhere, by reason of negligent running of the train, the liability exists.   If a train kills a tresspasser on its track, by negligence, it is liable.   The count avers that the train was pursuing the track,

and struck the child; and it is fair to say that the child was on the track, or very near it, and was thus struck. The case of *B. & O. R. Co.* v. *Whittington*, 29 Grat. 805, does hold that the declaration must state whether the person injured was a passenger employee, licensee or what; but we think that that case forgets the rule that some duty is owing by a railroad company to any one, even a trespasser, on its track anywhere, whether at a crossing or not. At any rate, we cannot follow that case in disregard of *Bias* v. *Railway*, 46 W. Va. 349. But in the *B. & O.* Case the count was not as good as in this case, since it simply alleged that the defendant conducted itself so negligently, carelessly and unskilfully as to inflict on Whittington severe bodily injury not saying how, whereas the counts in this declaration say that the train was by negligence driven against the child on the track. The same is to be said of the second count. It mentions no street, but simply alleges that the defendant negligently and carelessly drove its train against the child and killed her. If even I am wrong in saying that counts one and two are bad, as the third and fourth counts are good, the verdict being general, not on any particular count, the bad counts cannot reverse, as section 13, chapter 131, Code, says that where there are several counts, one of which is faulty, if entire damages are given, the verdict is good. As you cannot say on which count the jury found, the common law said that no judgment could be given; but the statute changes the rule. *Cook* v. *Thornton*, 6 Rand. 11; 2 Barton L. Prac. 695.

The second assignment of error is that the court allowed oral evidence to prove that Smith street had been used by the public as a public street, the claim of the plaintiff, under two counts of the declaration, being that the child was passing along that street and crossing the railroad, and was there struck by the train, and that the defendant did not blow the whistle or ring the bell for alarm as required by statute at public streets. The defendant contends that to come under this statute the records of the town council must be adduced to show it to be a public street. For this contention we are cited to *Childrey* v. *Huntington*, 34 W. Va. 466; *Boyd* v. *Woolwine*, 40 W. Va. 283; *King* v. *Talbott*, 32 *Id.* 6; *Ball* v. *Cox*, 29 *Id.* 407. Those cases do not apply to the case in

hand.   They are cases where the question was whether a city
was liable for defect in the street, or a contest between own-
ers of land as to the existence of a private right of way, or
a contest between the public and the owner as to the right
of a way over his land.   Surely, section 61, chapter 54, Code,
requiring a bell to be rung or a steam whistle to be whistled,
"where the railroad crosses any public street or highway,"
applies to any street or road actually used by the public gen-
erally as and for a street—used so generally, so long, as to
be fairly denominated and considered a highway, no matter
that no record of its adoption by the county court or council
can be produced.   According to the contention of counsel for
the defendant, this Smith street in a town of seven hundred
people, dedicated by the owner twenty-five years before this
lamentable accident, the dedication accepted by the public
by constant general use for that time, one of two main streets
in the town crossing the railroad and connecting the two sec-
tions of the town on the north and south sides of the railroad,
in the heart of the town, worked by the town authorities,
recognized by the railroad company itself as a public street
by making and keeping up a crossing on this street over its
tracks, and erecting a board at this crossing having on it the
warning, "Look out for the locomotive. Railroad Cross-
ing," and a whistling post to tell engineers where to give
alarm, is not such a street as to require the bell or whistle
alarm, simply because no order of council establishing or
recognizing Smith street can be found.   Surely that would
lop off much of the usefulness of the statute, and partially
defeat the design of the Legislature.   In *Hast* v. *Railroad
Co.*, 52 W. Va. 396, we hold that dedication accepted by pub-
lic and generally used makes a public highway between dedica-
tor and the public, though the dedication is not accepted by
the county court, though not for the purpose of charging
the county with the maintenance of the road.   General user
will, for many purposes, make a highway.   Many cases are
cited in 3 Elliott on Railroads, section 1154, for the proposi-
tion that if the place has been used as a passageway, for a
long time, and this use is with the knowledge and permission
of the railroad company, it is its duty to treat it as a highway.
From that late great work, Thomp, Com. on Negligence, section
1566, I quote:   "Under a statute of Georgia, the omission to

blow the whistle and check the speed of the train on approaching a crossing over a road which, though used to a greater or less extent by the public, has *never been legally established* as a road, is not negligence *per se*, though it is plain that it may be *evidence of negligence* to go to a jury, under principles already considered. The term '*any other road*' in such a statute, has been construed as referring to public highways only, and not to private crossings. A road which is openly and notoriously used as a highway, and which has been recognized by the railroad company as such, by *planking* and maintaining it as a *public crossing*, is within the meaning and operation of a statute requiring the whistle to be sounded or the bell rung on the approach of a train to a 'traveled public road or street.' It is not necessary in order to make a highway such as the statute intends, that there should be a technical, absolute public right acquired by prescription or otherwise. In the same State, it has been conceded that a public crossing over a railway may be established by a sufficiently *long user*, so as to put the railway company under the statutory duty of giving signals when its trains approach it. But the same court has held that, for a railway company merely to permit the public to use a crossing within a *switchyard*, does not make it a public road or street crossing, within a statute requiring signals to be given. A way provided by a railway company over its own grounds to its depot, has been held not to be a "*traveled public road,*" within the meaning of the same statute; but this seems untenable. On the other hand, evidence that a public road has been worked and traveled for ten or fifteen years has been held sufficient to show that it is a "traveled public road" within the meaning of the same statute. A statute of another state requiring such signals at "*publc highways*" is not limited to roads which are defined to be public highways in another statute of the same state, but includes a highway which is made public by *general use*. Under a statute requiring signals to be given upon approaching "the place where the railroad shall cross any traveled public road or street,"—it is held that the road or street must be *traveled* as well as *public:* it is not sufficient that there has been a mere *dedication* of the road or street to the public use. A statute of the kind under con-

sideration, which uses the word "public" as descriptive of
the roads at which the stated precautions are required, is not
to be restrained to roads which are laid out and established
as public roads in the statutory manner, but applies equally
to roads which have been *dedicated* by mere acts *in pais* by
land-owners to the use of the public, provided the extent of
travel upon them makes them public roads in *point of fact*."
I think that Smith street under such dedication and general
use was a public street; but we need not, for this case, rely
on that alone, because the company by making a crossing
with plank for wagons and with cinders for foot passengers
treated and held it out to the public as a public crossing, and
by locating a whistling post to give engineers the place for
sounding whistle or bell, and by uniformly sounding them,
admitted its duty to do so. The following from that late
great work, Elliott on Railroads, section 1154, will show this:
"In order to impose upon the company the duty to treat a
place as a public crossing, those who use the place as a cross-
ing must either have a legal right to so use it, or must use it
at the invitation of the company, and "neither sufferance nor
permission, nor passive acquiescence" is equivalent to an in-
vitation. If, however, the traveler uses a place as a crossing
by invitation of the company, it must use ordinary care to
prevent injury to him, as where the company constructs a
grade crossing and holds it out to the public as a suitable
place to cross. Where by fencing off a foot way over its
tracks it induces the public to so use it, by building to the
track plank bridges for foot passengers, or by constructing
gates in the railroad fence for the use of pedestrians who ha-
bitually cross the track, it thereby holds out the place as
proper for them to use. Such invitation as imposes on the
company the duty of ordinary care is implied, where by some
act or designation of the company persons are led to believe
that a way was intended to be used by travelers or others
having lawful occasion to go that way, and the company is
under obligation to use ordinary care to keep it free from
danger. There is much conflict of authority as to what con-
stitutes such a general use of a place as a crossing, or such
recognition of the right to use such a place, as will impose
upon the company the duty of observing the precaution re-
quired at public crossings, but we think the doctrine we have

expressed is the true one supported by the best reasoned cases and by the recognized principles of law." See *Norfolk Co.* v. *Carper*, 88 Va. 556, (14 S. E.. 328.) There can be no question that Smith street is a public street within the meaning of said statute under the facts of this case. It is prudent to say, upon the important question whether a road is a public one under the statute, that no general infallible rule can be given. Each case must depend on its facts where there is not legal establishment of the road or street. It is clearly not just to railroads to say that any one can open a passage on his land and by using it himself and allowing others to use it, compel the railroad company to sound its bell or whistle; it cannot be compelled to observe these precautions anywhere indifferently. On the other hand, it is unreasonable and defeative of the statute, to say that a way long used by the general public, dedicated by an owner for a highway, traveled by many persons, presenting constant danger to persons in crossing, plainly requiring these signals for protection of life of passengers both on the highway and railway, should not be so treated by the railroad, only because no order of court or council establishes it. Such a rule would dispense with such warnings at many crossings on the most public streets.

Another alleged error is based on the reading from the Code and books of reported cases by counsel of the plaintiff in argument before the jury. Counsel distinctly call upon us to say whether it is not error to allow counsel to read law to the jury against objection. The subject has been much discussed in *Bloyd* v. *Pollock*, 27 W. Va. 75; *Ricketts* v. *C. & O. Ry. Co.* 33 *Id.* 433; *Gregory* v. *O. R. R. Co.*, 37 *Id.* 606. As stated in the *Gregory Case* reading law from law books to the jury is very dangerous, and should not be indulged. So many books and decisions are read, of such diverse statement and conclusion, some good law, some bad, some not pertinent to the case, and misapplied to the facts, and at the close of the argument the law of the case is "confusion worse confounded." How can the most intelligent jury solve the riddle? The safer course is not to read law to the jury. As in this case it may entail reversal. The court has full power to refuse to allow it. It consumes time and lengthens trials. Attorneys should argue and apply the

facts, and get the law by instructions from the court, if de-
sired. If it is true that the jury is the judge of evidence and
the court of the law, then it follows that law should not be
read to the jury; for if the jury is not the judge of the law,
why read law books to it? The courts of the United States
do not allow it. In most of the states it is not allowed.
*Sullivan* v. *Royer*, 1 Am. St. R. 51 & note; *Phoenix* v.
*Allen*, 11 Mich. 501; *Hudson* v. *Hudson*, 16 S. E. 350. "The
practice of counsel reading from law books when arguing to
the jury is exceedingly dangerous and should not be indulged
in." *Steffenson* v. *Chicago*, 51 N. W. 610. "The court
may, in civil cases, refuse to permit counsel to read law to a
jury, and this cannot be assigned as error. It is the province
of the court, in such cases to interpret the law for the jury,
and not for the jury to interpret the law for themselves."
*Sprague* v. *Craig*, 51 Ill. 288. When, however, law has
been read, it becomes a question whether it should cause re-
versal. If the law is bad, or not pertinent to the case, un-
less instructions after such argument propound the sound
law on the very points to which the bad law relates, it will
call for reversal; but if so cured, it will not. If good and
pertinent law, it will not call for reversal. The law read in
this case was statute and decided law pertinent and sound,
except as stated below, and we see no cause for reversal
for that cause under cases above cited. I will say, however,
that the reading from *Cleveland* v. *Corrigan*, 3 L. R. A.
387, was bad, because it states three clashing lines of author-
ities, as to the care required of children, leaving it to the
jury to say which was the correct one. Perhaps plaintiff's
instruction 1 cured it; but it should not have been read.

But this does not end the trouble. The attorney read long,
confusing recitals of facts from decided cases. For what
purpose? From *Omaha* v. *Morgan*, a long recital of the
facts of that case—nothing but a recital of facts. What had
they to do with this case except to confuse the jury? Was it
intended to similarize the two cases? This was not admissi-
ble. It is purely evidentiary matter, which everybody con-
cedes to be not allowable, because a jury must try a case by,
and only, by its own evidence. The facts had little or no simi-
larity with the case before the jury. So far as they had, it
was improper; if they had not, then it was improper for that

case to touch this case. Then, there is the long detail of facts read from *Surft* v. *Staten Island*, 25 N. E. 378, touching injury to a little girl of fifteen while crossing a railroad track, injured while watching one train by another approaching from another direction. The cases being nearly akin in facts and character, the object was to lend strength to the plaintiff's case by using that case as a precedent; in other words, to try this case by that case. It also contained much argumentation to prove the liability on the facts of that case—the mere facts—and thence deduced liability on the defendant in this case. It is not allowable to thus introduce evidence and facts of another case, because it lends its impress, influences, or may in fluence, the jury trying the case in hand. It is matter foreign and extraneous to the case. See *Ricketts* v. *Ches. & O. Ry.*, 33 W. Va. 433, citing 1 Thompson on Trials section 947, saying that counsel had no right to introduce any *evidentiary* matter not in evidence, and cannot under pretence of reading law books read passages which bear on questions of facts before the jury. It is not allowable even to read the facts of the same case as contained in a report of a decision upon it in the supreme court. *State* v. *Wright*, 72 Am. D. 533.

For reasons stated above as to Smith street being a street, we think defendant's instructions 8 and 9 bad, as they say that user will not make a street, but only record acceptance of dedication. In any view, under all circumstances of the case, they were inapt and misleading. Judgment reversed, verdict set aside, new trial awarded, case remanded.

*Reversed.*