# Staunton.

## NAGLEE v. A. &. F. RAILROAD CO.

### SEPTEMBER 22d, 1887.

RAILROAD COMPANIES—*Liabilities—Evasion.*—By executing a deed conveying its road, franchises, &c., to trustees selected by itself, a railroad company cannot evade its legal liabilities for injuries subsequently done to persons and property by the negligent operation of its road.

Argued at Richmond.    Decided at Staunton.

Error to judgment of circuit court of Prince William county, rendered May 12th, 1885, in action at law in which —— Naglee is plaintiff and the Alexandria & Fredericksburg Railway Company is defendant. The plaintiff obtained a writ of error and *supersedeas* to the judgment complained of. Opinion states the case.

*S. F. Beach* and *John M. Johnson,* for the plaintiff in error.

*Francis L. Smith,* for the defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

This action is trespass on the case, to recover damages from the defendant for the destruction of the plaintiff's property by fire alleged to have been caused by the negli-

708 NAGLEE *v.* A. & F. R. R. Co.

gence of the defendant company's agents and servants. There was a demurrer to the evidence, and damages to the amount of $1,800 were assessed by the jury for the plaintiff, subject to the judgment of the court on the demurrer to the evidence. Judgment on the demurrer was given for the defendant, the court holding that as the defendant's railroad, at the time of the burning, was operated by trustees under a deed of trust, the company itself was not responsible. This ruling of the court is assigned as error, and this is the only question in the case.

It is proved by the evidence in the record and admitted by the demurrer to the evidence that the plaintiff's property (his fencing, timber and grass) was extensively and repeatedly, as alleged in the declaration, destroyed by fires caused by the negligent operation of the locomotives running over the railroad of the defendant company; but the defense is set up by the company and sustained by the court that at the time of the injury inflicted, in 1880 and 1881, the railroad property of the defendant company was in the possession of, and being operated by, the trustees in a deed of trust executed by the defendant in June, 1866, the said trustees having taken possession of the road and controlled and operated it since December, 1872. No evidence was offered to prove, nor was it pretended, that the surrender of the possession and control and operation of the road by the company to the said trustees was, in any way or form, involuntary or compulsory; nor was there any effort or evidence to prove that the public at any time had notice, either actual or constructive, of such transfer or surrender. The proof simply was that the trustees, during the period named, had the possession and operation of the road. The defendant, the Alexandria & Fredericksburg Railway Company, was chartered by the general assembly of Virginia February 3, 1864, and its charter was amended by an act approved June 4, 1870. By its charter and by the presump-

tion of law it is bound to all its obligations and duties to the public, and it is the party *prima facie* responsible for injuries to persons or property caused by its negligence in the operation of its road; and being, *a priori,* so bound and liable, it remained so until by its own burden of evidence every basis for the presumption had been completely removed. The defendant company, claiming exemption from its presumptive legal liability for the proved and admitted injury caused by the operation of its road, under the plea of a previous surrender of the possession, control and operation of its road to its own selected agents, it is bound to show its legal authority for the deed of trust or contract by which it could shift its legal liability and transfer to its own trustees the performance of duties which it assumed by the acceptance of its charter—the performance of which duties was the consideration for the grant of its charter; and having shown so much, if it were possible in the case, it remains for it further to show that the surrender or transfer in time, manner and circumstance was such as to exonerate it from subsequent responsibility to the public for the manner and consequences of the discharge of its charter duties and obligations.

The decisions are numerous in which railroad companies have been held exempt from liablity for injuries, torts or breaches of contract growing out of the operation of their road in the hands of mortgage trustees; but the cases were those in which the power to mortgage was conferred by charter, and where the possession of the trustees was adverse to the company and the result of proceedings *in invitum*—cases arising in those States where special statutes existed authorizing and regulating the surrender and transfer of a company's road and franchises to trustees for the benefit of creditors. In an elaborate note by the editor of the American Decisions (vol. 75, p. 548) on "railroad corporation's power to transfer its franchises and property,"

where the authorities on the subject are collected and compared, the cases of *Hall* v. *Railroad*, 21 Law Rep. 138 (quoted and relied on in brief of counsel for defendant in error), and of *Railroad* v. *Metcalfe*, 4 Metc. (Ky.) 200 (also cited for defendant in error), are specially noticed as conflicting with other decisions upon the subject, and preference is given to the other decisions as expressing the correct view of the law. In the case of *Coe* v. *Railroad Co.*, 10 Ohio St. 375 (also quoted by the defendant in error), the court held that the company could mortgage its franchise to take toll and to maintain the railway, because of distinct legislative authority so to mortgage the franchise.

The question in this case under review is whether in this State, where there is no statutory provision authorizing or regulating the transfer and surrender of its road, the company defendant can escape liability for a proved injury by showing a previous voluntary surrender to mortgage trustees, and indefinitely substitute those trustees for the company in the exercise of their corporate rights and franchises and the discharge of their charter obligations to the public, so as to exonerate the company from liability for injuries inflicted in the operation of the road upon the persons or property of the public. To affirm this question would be to place the public at the mercy of collusive arrangements by which the ends of justice would all be defeated, and would conflict with every principle and analogy of the law of Virginia.

A railroad company in Virginia is a *quasi* public corporation, which, whatever it may do, cannot, by its own voluntary contract or collusion, surrender its functions and responsibilities to agents or trustees of its own selection, living, it may be (and as in this case is the fact, by the record), outside the limits of the State, beyond the reach of its tribunals and its process, with no one in the State to respond to the demands for the wrongs and injuries done

to its citizens, howsoever grievous or heinous they might be. See 1 Wood, Ry. Law, § 5, pp. 9, 10; 2 Wood, Ry. Law, § 345, p. 1392; *Thomas* v. *Railroad Co.*, 101 U. S. 71; 1 Ror. R. R. 238; Pierce, R. R. 496, and note. The franchises and powers of such a company are in large measure designed to be executed for the public good, and this exercise of them is the consideration for granting them. A contract by which the company renders itself incapable of performing its duties to the public, or attempts to absolve itself from its obligations, without the consent of the State, violates its charter, and is forbidden by public policy. *Thomas* v. *Railroad Co.*, 101 U. S. 71. "Such corporations are created * * * to answer the public good, * * * and cannot, therefore, by mere common-law authority, divest themselves by direct act of their capacity to discharge the duties to the public which devolve upon them ; and, as a sequence thereto, cannot do that which may indirectly lead to the same thing, as, for instance, make a mortgage, which, by foreclosure and sale, may end in bringing about the inhibited result." 1 Ror. R. R. 238.

In Pierce on Railroads, 496, it is said: "The company cannot, according to the current of the decisions, without special authority of statute, alienate its franchise or property acquired under the right of eminent domain or essential to the performance of its duty to the public, whether by sale, mortgage, or lease."

In *Railroad Co.* v. *Brown*, 17 Wall. 450, the supreme court says: "It is the accepted doctrine in this country that a railroad corporation cannot escape the performance of any duty or obligation imposed by its charter, or the general laws of the State, by a voluntary surrender of its road into the hands of lessees." A voluntary surrender to trustees, under a mortgage for which there is no legislative authority, cannot have a different operation.

In *Railroad Co.* v. *Winans*, 17 How. 39, it is said : "The

corporation cannot absolve itself from the performance of its obligations without the consent of the legislature."

The supreme court of Massachusetts, in *Richardson* v. *Sibley*, 11 Allen, 65, say : "A corporation, created for the very purpose of constructing, owning, and managing a railroad for the accommodation and benefit of the public, cannot, without distinct legislative authority, make any alienation, absolute or conditional, either of the general franchise to ·be a corporation, or of the subordinate franchise to manage and carry on its corporate business; ' which,' says the learned editor of the American Decisions in one of its recent volumes (75 Amer. Dec. 549), ' in qur opinion, expresses the correct view.' "

The supreme court of New Hampshire, in *Pierce* v. *Emery*, 32 N. H. 484, say : " They may sell or mortgage their personal property, but they cannot sell or mortgage with it the right to manage and control the road, nor any corporate right or franchise."

The supreme court of the United States, in one of its. very latest decisions (*Penn. Co.* v. *St. Louis, Alton, &c., Railroad*, 118 U. S. 309), says : " We think it may be stated as the just result of these cases, and on sound principle, that unless specially authorized by its charter, or aided by some other legislative action, a railroad company cannot by lease, or any other contract, turn over to another company, for a long period of time, its road, and all its appurtenances, the use of its franchise, and the exercise of its powers."

The same facts as in this case—so far as the effect of the possession of the road of the company, and its operation by trustees under a mortgage, was the question—were before the supreme court of Illinois· in the case of *Grand Tower Manufacturing and Transportation Co.* v. *Ullman*, 89 Ill. 244, and it was held that where a railroad is in the hands of trustees, exercising the same functions the cor-

poration was formed to exercise, and injury ensues, a person may sue the corporation, and recover damages, and will not be compelled to sue the trustees, though both were liable and might be sued.

In the case of *Thomas* v. *Railroad Co.*, 101 U. S. 71, it was contended that "a corporate body may (as at common law) do any act which is not, either expressly or impliedly, prohibited by its charter," etc.; but the court said: "We do not concur in this proposition. We take the general doctrine to be, in this country (though there may be exceptional cases and some authorities to the contrary), that the powers of corporations, organized under legislative statutes, are such, and such only, as those statutes confer. Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others."

No provision is found in the charter of the defendant company, or in the general railroad law of Virginia, which will authorize the company to transfer to trustees or to mortgagees, under the deed of trust given as a mere incumbrance and security, the right and legal capacity to step into the shoes of the company and assume and exercise *indefinitely* the franchises, rights and privileges of the company, so as to give the company exemption and immunity from responsibility for all injuries inflicted by the operation of the road by the trustees. Whatever may be the effect of the deed of trust upon the "works and property" of the company, as a security between the company and its bondholders, it cannot be set up by the company as a defense against liability for injuries to persons or property inflicted by the negligent operation of the road. "A mortgage by which a corporation undertakes to mortgage both its *property* and *franchises* may be good

as to the property, although invalid as to the franchises."
3 Wood, Ry. Law, § 456. But assuming the validity of the
deed of trust, as well for the incumbrance of the franchises
as the works and property of the company, and the lawful
duty and necessity for the trustees to take possession of
both, for and until a *sale* could be effected, and a *convey-
ance* made to the purchaser, according to the terms of the
deed of trust, and the requirements of the railroad law of
the State, it is against the public policy and law of Vir-
ginia that they may take possession of the road and man-
age and control its operation *indefinitely*, or, as in this case,
for eleven years, and thereby exempt the company from
its legal and moral responsibilities to the public under its
charter.

We are of opinion that the circuit court of Prince Wil-
liam county erred in holding the defendant in this case to
be exempt from liability for the injury sustained by the
plaintiff; that the judgment complained of must be re-
versed and annulled; and that this court will enter judg-
ment for the plaintiff upon the verdict rendered by the
jury upon the facts in the case.

JUDGMENT AFFIRMED.