## CHARLESTON.

### RICKETTS v. CHESAPEAKE & O. RY. Co.

Submitted January 9, 1890.—Decided January 29, 1890.

1. RAILROAD COMPANIES—LEASE—LIABILITY.

   A railroad company chartered by a state can not, without distinct legislative authority, by lease, or any other contract or

55

arrangement, turn over to another company its road and the use of its franchises, and thereby exempt itself from responsibility for the conduct and management of the road.

2. RAILROAD—COMPANIES—LIABILITY—DAMAGES.

Where a railroad company chartered by this state, permits a foreign railroad company to operate a part of its road in this state under a verbal arrangement, and the two railroads form a continuous line through and beyond the limits of this state, the domestic company will be liable for injuries sustained on that portion of its road so operated by the foreign company.

3. RAILROAD COMPANIES—EVIDENCE.

Upon the trial of an action for damages it is error for the court to permit the counsel for the plaintiff, in argument, over the objection of the defendant, to read to the jury, upon the question of the measure of damages, extracts from reported cases, showing large damages held not excessive.

4. RAILROAD COMPANIES—DAMAGES--EXEMPLARY DAMAGES.

A railroad company can not be made responsible for exemplary damages on account of injuries done by one of its servants, even though the act was wanton and malicious, unless the act was expressly or impliedly authorized or ratified by the company.

*Simms & Enslow* for plaintiff in error.

*Vinson & McDonald* and *J. S. Marcum* for plaintiff in error.

SNYDER, PRESIDENT:

Action of trespass on the case, commenced on July 19, 1886, in the Circuit Court of Wayne county, by G. C. Ricketts, against the Chesapeake & Ohio Railway Company, for damages alleged to have been sustained by the plaintiff by reason of an assault committed upon him by an employe of the defendant. There was a demurrer to the declaration, which was overruled, and afterwards a trial by jury on the issue of not guilty resulting in a verdict and judgment in favor of the plaintiff for the sum of $5,000.00. During the trial the defendant excepted to certain actions and rulings of the court, and to review said actions and rulings it has brought this writ of error.

All the evidence adduced on the trial is made a part of the record, and the first error complained of is that upon the facts disclosed the defendant is not liable for the alleged injury to the plaintiff, because the wrong, if any, was done by

the Elizabethtown, Lexington & Big Sandy Railroad Company, and not by the defendant. The facts in respect to this question are as follows: The defendant is a domestic corporation, passing through this State, and connecting at the Big Sandy river, the State line, with the Elizabethtown, Lexington & Big Sandy Railroad Company, a Kentucky corporation; and by a verbal arrangement between these two companies the Elizabethtown, Lexington & Big Sandy Company operated that part of the defendant's road between the Big Sandy river and Huntington, a distance of about ten miles, in this State. These two roads, while existing under separate charters and organizations, were in fact operated as a continuous line of railroad from Newport News, in the State of Virginia, to Lexington, in the State of Kentucky, passing through Richmond, Virginia, Huntington, in this State, and Catlettsburg, in Kentucky. The evidence does not disclose the terms under which that part of the defendant's railroad between Huntington and the State line was operated, or how the expenses were provided for, or what division or disposition was made of the earnings. It does appear, however, that the defendant owns a large part of the rolling stock used on that part of its road; that at least some of the officers and servants in charge of that part of its line were paid by the defendant; and that the Elizabethtown, Lexington & Big Sandy Company had not complied with the provisions of the statutes of this State in such manner as to authorize it to operate a railroad in this State.

The facts further show that on December 21, 1885, the plaintiff, at Catlettsburg, in Kentucky, purchased of an agent of the Elizabethtown, Lexington & Big Sandy Company a ticket from that place to Huntington; that upon said ticket he took passage upon a train to Huntington, and after passing on the train into this State he was found by the conductor in the ladies' car smoking a cigar, and then and there a difficulty arose, which resulted in the alleged assault upon and injury to the plaintiff, for which he brought this action.

It seems to me that under this state of facts the defendant was liable to the plaintiff, if he was injured by reason of the misconduct or negligence of the officers or employes on the said train. The court, in its opinion in *Railroad Co.* v.

*Winans,* 17 How. 38, 39, says: "Important franchises were conferred upon the corporation to enable it to provide the facilities for communication and intercourse required for the public convenience. Corporate management and control over these were prescribed, and corporate responsibility for their insufficiency provided, as a remuneration to the community for their grant. The corporation can not absolve itself from the performance of its obligations without the consent of the legislature." And in *Railroad Co.* v. *Brown* the court says: "It is the accepted doctrine in this country that a railroad corporation can not escape the performance of any duty or obligation imposed by its charter, or the general laws of the State, by a voluntary surrender of its road into the hands of lessees. The operation of the road by the lessees does not change the relations of the original company to the public." 17 Wall. 459; 1 Redf. R. R. c. 22, § 1, p. 616.

In *Naglee* v. *Railroad Co.,* 83 Va. 707, (3 S. E. Rep. 369,) the Court decided that by executing a deed conveying its road, franchises *etc.,* to trustees selected by itself, a railroad company can not evade its legal liabilities for injuries subsequently done to persons and property by the negligent operation of its road.

We think it may be stated, as the just result of the decided cases, and on sound principle, that a railroad corporation can not, without distinct legislative authority, by lease, or any other contract, turn over to another company its road and the use of its franchises, and thereby exempt itself from responsibility for the conduct and management of the road. *Pennsylvania R. Co.* v. *St. Louis, etc., R. Co.,* 118 U. S. 309, 6 Sup. Ct. Rep. 1094; *Transportation Co.* v. *Ullman,* 89 Ill. 244; *Thomas* v. *Railroad Co.,* 101 U. S. 71.

In order to understand the next error complained of, which relates to the instructions to the jury, it is necessary to state, that the evidence for the plaintiff tended to prove that the plaintiff was a passenger on the train, and, finding no fire in the smoking-car, he went into the ladies' car, and was there smoking a cigar, but, upon being informed by the conductor that it was a violation of the rules of the company to smoke in that car, he desisted; that soon after a brakeman on the train struck him on the face, knocked him down, and injured

him very seriously. The brakeman who assaulted the plaintiff was only acting as brakeman on the passenger train for that trip, his general employment and duties being that of brakeman on freight trains; and it is not shown that he was thereafter allowed to do service on any passenger train. It is proper to state, also, that the evidence of the defendant tended to show that the plaintiff persisted in smoking in the ladies' car after repeated requests to stop it or go into the smoking-car; and that he was the aggressor, and his misconduct was the prime cause of the combat which resulted in the injury of which he complains.

While arguing the case to the jury, the plaintiff's counsel was allowed by the court, against the protest and objection of the defendant, to read from the American Reports verdicts in which large damages had been found by juries in cases similiar to the one on trial. At the instance of the defendant, the court afterwards instructed the jury "that in case they find for the plaintiff they are not to take into consideration, nor be influenced by, the verdicts of the juries in the cases read to them by the attorney for the plaintiff, in the argument of this case, in fixing the amount of damages the plaintiff is entitled to."

The plaintiff in error insists that it was error to permit the counsel for the plaintiff to read the said verdicts to the jury, and that the instruction of the court to disregard them did not cure the error and wrong done thereby. In 1 Thomp. Trials, § 947, the law is stated as follows : "Counsel have no right, in argument, to introduce any evidentiary matters to the jury, which have not been regularly offered and admitted in evidence, in presenting the evidence in support of the action of the defence. * * * Applying these principles, it is held, even in those jurisdictions where counsel are permitted to argue the law to the jury, that they can not be allowed, under pretense of reading legal authorities to the jury, to read passages from such books which bear upon questions of fact which are before the jury for consideration, thus introducing to the minds of the jurors evidentiary matters which have not been regularly admitted by the presiding judge." *Insurance Co.* v. *Allen,* 11 Mich. 501; Baldwin's Appeal, 44 Conn. 37.

In *City of Evansville* v. *Wilter*, 86 Ind. 414, which was an action against a city for damages resulting from injuries caused by a defective sidewalk, the court held: "Upon the trial, in such action, it is error to permit counsel for the plaintiff, over objection, in argument to the court in the presence of the jury, upon the question of the measure of damages, to read extracts from reported cases showing large damages held not excessive; but such error is cured by a direction of the court to the jury to the effect that the case before them must be determined upon the evidence, uninfluenced by the damages given in other cases."

It is difficult, if not impossible, to discover how, or in what way, the reading of verdicts in other cases could enlighten the court or the jury upon the principles of law involved in the discussion of the question of damages. It is almost impossible to resist the conclusion that the extracts which the counsel read were not read with a view to enable the court to rightly decide upon the law as to damages, but that the purpose was to reach and influence the jury in the amount of damages they should find in the case on trial. As the reading of such extracts could not enlighten the court as to its duties, and it being clearly improper matter to be read to the jury, it was necessarily error to permit it to be read by counsel; and the court should have sustained the objection of defendant's counsel. It is unnecessary, in this case, to decide whether or not the instruction of the court to disregard said extracts in making up their verdict cured the error, because the judgment here must be reversed for another error. It may be proper to say, however, that as a general rule such error may be cured by such an instruction; but whether it will or not must depend upon the propriety of the verdict, and other facts in the particular case. The safer rule, therefore, seems to be to exclude such matters in the first instance, and not depend upon nullifying their prejudicial effects by an instruction.

From what has preceded, it sufficiently appears that the plaintiff in error was not prejudiced either by the refusal or the giving of any of the instructions, unless there was error in the giving of the following: "The court instructs the jury that if they find the defendant guilty they are, in estimating

the damage, at liberty to consider the health and condition of the plaintiff before the injury complained of, as compared with its present condition, in consequence of said injuries, and whether said injury is in its nature permanent ; and the reasonable expense incurred by the plaintiff, if any, in curing, or endeavoring to cure, the injuries he received ; also, the damages suffered, if any, from the loss of time and inability to attend to business, resulting from the injuries received: also, the bodily and mental pain and suffering, if any, resulting from the injuries received, and for the outrage and indignity put upon him, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injury which the plaintiff has sustained;* and that if they believe that this assault was made in a malicious, unlawful, wanton, and unnecessary manner, then they will be warranted in giving the plaintiff exemplary damages." ·

It seems to me that there is no valid objection to all that part of said instruction which precedes the star, (*.) as above printed ; but I am of opinion that the sentence following the star is erroneous. There was no evidence in this case proving, or even tending to prove, that the conduct of the brakeman in assaulting and injuring the plaintiff was either authorized or ratified by the company. In *Downey* v. *Railway Co.*, 28 W. Va. 732, 743, this Court, after referring to the fact that there was some diversity in the decisions, says: "But the better and more reasonable doctrine seems to be, that the railway company is not to be held liable in examplary damages for injuries caused by the negligence of its servants, unless it be shown that the servant's act was willful, and was either authorized or ratified by the company ; but such authorization or ratification can be evidenced either by an express order to do the act, or an express approval of its commission, or by an antecedent retention of a servant of known incompetency, or by a subsequent retention or promotion of the negligent servant." Patt. Ry. Acc. Law, § 392, p. 471.

As before stated, the evidence in this case shows that the brakeman who caused the injury complained of was only acting as brakeman on the train for that trip ; and there is no evidence even tending to show that his conduct was

either authorized or approved, or that he was incompetent, or of known bad character. In the absence of any such authorization or approval of the act of the brakeman, even if it was wanton and malicious, the company can not be made responsible for examplary damages. The extent to which it could be held liable would be for compensatory damages, such as are designated in the first part of the instruction. The character of the damages for which the defendant could be made liable having been specifically and fully covered by the first portion of the instruction, it was error to tell the jury, as the concluding sentence of the instruction in effect does, that they might, if they believed the assault was wanton, and malicious, then, in addition to such damages as were characterized in the first part of the instruction, assess the defendant with examplary or punitive damages. *Pegram v. Stortz*, 31 W. Va. 220, (6 S. E. Rep. 485.) For this error the judgment of the Circuit Court must be reversed, and a new trial directed.

REVERSED. REMANDED.