# CHARLESTON.

## TURNER v. NORFOLK & W. R. Co.

Submitted January 15, 1895—Decided April 17, 1895.

1. RAILROAD COMPANIES DECLARATION—NEGLIGENCE.
    The allegation in the declaration that the defendant, "without ringing the bell or blowing the whistle, or giving any warning whatever," is a general allegation, under which the plaintiff may introduce any evidence tending to prove any negligence on the part of the defendant wherein it failed to give warning of an approaching train.

2. INSTRUCTIONS—REVERSAL.

If it plainly appears that the defendant could not have been injured by the modification of an instruction asked, even though the modification was unnecessary, the failure to give such instruction without such modification is not sufficient cause for the reversal of the judgment.

3. CONTRIBUTORY NEGLIGENCE—INFANT—JURY.

In determining whether a boy sixteen years of age was guilty of contributory negligence, the jury have the right to take into consideration his age, capacity, and experience, and although he may have been guilty of an act which in an adult would have amounted to an assumption of the risk of injury, and a waiver of the duty the master owes him, yet he can not be held to have assumed any such risk or waived any such duty, which one of his age, discretion and experience could not fully comprehend and appreciate.

4. CONTRIBUTORY NEGLIGENCE—INFANT—NEGLIGENCE OF VICE PRINCIPAL.

A minor has the right to rely upon the superior skill and knowledge of the foreman having authority over him, and if, in obedience to such foreman's directions, he runs into unknown dangers, against which it is the duty of the foreman to warn him, but which duty such foreman negligently fails to perform, he can not be held to be guilty of contributory negligence or to have assumed the risk of such dangers.

5. DAMAGES—JURY—VERDICT.

The action of the jury assessing damages in case of the death of a person by the wrongful act, neglect, or default of another is not reviewable, as no damages allowed by the jury within the limit fixed by the statute can be deemed excessive, their determination of this question being absolute and exclusive as to what damages are fair and just, unless the verdict evinces passion, prejudice, partiality, or corruption on the part of the jury.

6. EXEMPLARY DAMAGES—NEGLIGENCE.

In all cases of negligence the law governing the assessment of exemplary, punitive, or vindictive damages is the same whether death result or not.

CAMPBELL & HOLT for plaintiff in error.

I.—*The engineer and fireman of the special engine were fellow servants of the decedent, a section hand upon the track.*— 109 U. S. 478; 27 Md. 589; 58 Wis. 585; 9 Cush. (Mass.) 112; 88 N. Y. 481; 31 Minn. 553; 35 N. W. Rep. 582; 5 N. Y. 492.

II.—*The plaintiff's decedent was guilty of contributory negligence.*—Cooley on Torts (2d Ed.) p. 812; 29 W. Va. 98; 33 W. Va. 548; 88 Mich. 334; 30 W. Va. 798.

III.—*Turner, the party killed, was sixteen years of age, and having passed the age of fourteen, he was presumed to have had sufficient capacity and understanding to be sensible of danger, and of having had the power to avoid it, and this presumption should stand until it is overthrown by proof of the absence of such discretion and intelligence.*—88 Pa. St. 35 ; 39 N. Y. S. R. 520 ; 34 N. E. Rep. 186 ; 54 Am. & Eng. R. Cases 121 (Ky.) ; 78 Ill. 88; 33 N. Y. 644 ; 15 N. W. Rep. 115 ; 58 N. Y. 248.

IV.—*The former opinion herein recognizes, permits and commends the doctrine of punitive damages contrary to the former adjudication of this Court upon the subject.*—31 W. Va. 242–355 ; 13 W. Va. 158 ; 25 W. Va. 139 ; 20 W. Va. 253.

V.—*The right given a jury by section 6 of chapter 103 of the West Virginia Code to assess damages not to exceed ten thousand dollars, whenever the death of a person has been caused by a wrongful act, is not a right that may be exercised arbitrarily ; but their exercise thereof is always subject to proper correction and control by the court under the established rules of law.*

VI.—*In the case at bar the evidence failed to furnish any proper data upon which to base a verdict or judgment.*—45 Ill. 197 ; 43 Ill. 338 ; 18 Iowa 281 ; 47 N. J. L. 28 ; 26 Ill. 400 ; 84 Pa. St. 419.

VII.—*The verdict was contrary to the evidence.*

VIII.—*The plaintiff's declaration did not allege negligence in general terms, but stated the specific acts of omission and commission constituting the alleged negligence, and his instructions No. 4 and 5, being based on an omission of the defendant not included in the declaration were erroneous.* —15 W. Va. 628.

IX.—*The plaintiff's intestate was guilty of contributory negligence.*

X.—*The defendant's instructions were improperly refused.*— 30 W. Va. 798.

Marcum, Peyton & Marcum for defendant in error :
*The verdict was supported by the evidence.*—33 W. Va. 319.
*The allegations of declaration are general.*—15 W. Va. 628 ; 30 W. Va. 698 ; 32 W. Va. 372.

*Objection to testimony must be made in trial court.*—27 W. Va. 306.

*The modification of instructions was proper.*—30 W. Va. 798; 37 W. Va. 606.

*The defendant in error is not guilty of contributory negligence.* —Wood Mas. & Serv., § 366.

*Need not aver nor prove next of kin in West Virginia.*—28 W. Va. 610; 32 W. Va. 370.

*Nor in Virginia.*—29 Gratt. 431; 29 Gratt. 570; 32 Gratt. 394; 36 Fed. Rep. 102.

*Nor in North Carolina.*—94 N. C. 250.

*Measure of damage in Missouri.*—31 Mo. 574.

*In Alabama.*—58 Ala. 672; 59 Ala. 272.

*In Maryland.*—24 Md. 271.

*In Nevada.*—7 Sawyer 224.

*In Illinois.*—43 Ill. 338; 123 Ill. 641; 75 Ill. 468; 83 Ill. 204; 129 Ill. 344.

*In New York.*—47 N. Y. 317; 14 N. Y. 310; 38 N. Y. 445; 92 N. Y. 219; 48 Hunter 517; 1 N. Y. Sup. Ct. 257; 34 Hun. 80; 77 N. Y. 588; 15 Hunter 559.

*The burden of proving contributory negligence on defendant.* —16 W. Va. 307.

*The fault in a case like this must amount to rashness, or recklessness.*—17 S. E. Rep. 645.

*As to contributory negligence in minor servants.*—76 Ill. 32; 1 Shear. & Red. on Neg., pp. 376, 378; 27 W. Va. 32.

DENT, JUDGE:

Nathaniel Turner, administrator of the personal estate of Pearly Turner, deceased, instituted suit in the Circuit Court of Wayne county on the 11th day of February, 1892, against the Norfolk & Western Railroad Company, for the sum of ten thousand dollars damages on account of the death of said Pearly Turner, and on the 8th day of October, 1892, recovered the judgment for the sum of four thousand five hundred dollars, being the amount of damages assessed by a jury.

The defendant, upon a writ of error to this Court insists upon the following errors: *"First.* The court erred in granting the plaintiffs instructions numbers 4 and 5. They were

each irrelvant and misleading, in that neither was predicated upon the specific act of negligence charged in the plaintiff's declaration. *Second.* If it were proper for the court to grant the plaintiff's instructions numbers 4 and 5, then it was error to refuse to grant your petitioner's instructions numbers 1 and 2, as by it prayed. *Third.* The court erred in not setting aside the verdict as contrary to the law and evidence. *Fourth.* The measure of damages in case of death is the value of a man's life to his estate. The record contains no evidence whatever of the deceased's earning capacity, and the verdict was in consequence, not only excessive, but absolutely without foundation, and should have been set aside."

The material facts in this case are as follows:    On the —— day of February, 1892, Pearly Turner, a boy sixteen years of age, of average intelligence, industrious, obedient and healthy, while in the employ of the defendant, under the direction and control of a foreman named Alley, met his death in a collision between an extra engine and a hand car, at a curve about five miles from Wayne Courthouse. The deceased was on the hand car with a crew of employes, all of whom, at the time of accident, were acting under the orders and immediate supervision of said foreman. The foreman went ahead of the hand car to the curve, and without going himself or sending some one else to ascertain whether an extra was coming, as the rules of the company required him to do, got on the hand car and started around the curve, and met the engine near the middle thereof. All escaped except the deceased, who was killed outright.

The evidence is conflicting as to whether the whistle of the engine was sounded or the bell was rung; the engineer and crew with him testifying that the whistle was sounded and the bell rung at a road crossing eight hundred or nine hundred feet from the curve, and that such sounding of the whistle was for the curve, as he, the engineer, was on the lookout for a gang of carpenters. None of the crew on the hand car heard either signal, and some other parties testify that they did not hear either whistle or bell, although in position to do so. The deceased had been in the employ of the company for about five months, had passed over the road frequently, and

had often flagged trains for the foreman. His father was dead, but his mother was living.

*First.* The instructions referred to in the first assignment of error are as follows, to wit: "No. 4. The jury are inInstructed that when a railroad company puts a foreman in charge of a gang of laborers, with power to discharge them, subject to the approval of the supervisor and makes it the duty of said foreman to see that these laborers perform their duty faithfully, such foreman must, in the performance of all his duties to those laborers under him, be regarded as the representative of the railroad company, and if, through his neglect of duty, one of these laborers in the performance of his duty, is injured without negligence upon his part, such laborer may recover of the railroad company the damages he has sustained, caused by the negligence of such foreman without the knowledge of such laborer. No. 5. The court instructs the jury that the plaintiff's intestate, Pearly Turner, had the right to assume that his foreman, E. Alley, would give all proper attention to his safety, and that he would not be carelessly and needlessly exposed to risks and damages not necessarily resulting from his occupation, and which might have been prevented or much diminished by ordinary care and precaution on the part of his master or his representative, in this case Foreman Alley." The objection to these instructions is an alleged variance between the declaration and the proof. The part of the declaration referred to is as follows: "While said plaintiff's intestate was engaged in propelling and operating the said hand car on defendant's track on said section, without any default or negligence on his part, and without any knowledge of the danger to which he was then and there exposed, the said defendant wrongfully, negligently and injuriously ran and caused to be run a certain steam locomotive engine around a sharp curve and through a deep cut, without ringing the bell or blowing a whistle, or giving any warning whatsoever, with great force and violence over, upon and against the said hand car, upon which said plaintiff's intestate was as aforesaid, whereby and by reason whereof the plaintiff's intestate was bruised, wounded and mangled, from which said

wounds, bruises and injuries afterwards, to wit, on the day and year aforesaid, he died." The defendant insists that the instructions were not proper, because the jury, under this declaration, could not find the defendant guilty of an act of negligence committed by Foreman Alley in not taking the required steps to ascertain and warn the deceased of the approaching train. This was a duty the defendant owed to the deceased and which it imposed upon his foreman, and certainly comes within the general allegation of the declaration, "without any warning whatsoever." Foreman Alley was the agent of the defendant as to giving this warning, and his failure to do so was the failure of the defendant. It was necessary for the jury under this declaration to have before them and take into consideration any and all failures on the part of the defendant to warn deceased of the approaching train, and if the defendant had warned him through any of its agencies, it would have been sufficient, although all the others had been guilty of negligence in this respect; and the declaration is founded on the fact that the defendant failed in its duty, and if it had not been broad enough to cover the negligence of Foreman Alley, it would have been bad on demurrer or motion to exclude the evidence. The demurrer was overruled, and properly so, and no motion was made to exclude the evidence. The evidence which justifies the instructions was first introduced by the defendant on its theory of the case, to show contributory negligence on the part of deceased, and being in for its purposes, it could not have it excluded because it sustained the plaintiff's case. The instructions were, therefore, proper to meet the defendant's claim of contributory negligence, if for no other purpose. The defendant can not relieve itself in a case of this character, resulting from the negligence of its servants, by showing that others of the servants were equally or more negligent, and if they had not been so, the accident would not have happened, unless it shows that the deceased contributed to the latter's negligence. An attempt of this kind was made in this case, and was properly met by these instructions. Under this view of the questions presented, the authorities referred to by the defendant's counsel have

no application to this case, but only where there is a plain variance between the allegations and the evidence, which has been taken advantage of in the trial court and not here raised for the first time. On this subject, in addition to the authorities cited by plaintiff's counsel, see *Long* v. *Campbell*, 37 W. Va. 665 (17 S. E. Rep. 665).

*Second.* The instructions referred to in the second assignment of error are as follows, to wit: "No. 1. The court instructs the jury that, if they believe from the evidence that E. Alley was a foreman of the defendant, in charge of a gang of laborers putting in cattle guards along defendant's line; that the plaintiff's intestate, Pearly Turner, was a member of such gang, and subject to the authority of said Alley; that on the morning of January 28, 1892, the said Turner, in company with his said foreman and the other laborers of the gang under him, got on a hand car on the defendant's railroad track willingly and without objection, and rode along on said hand car in the direction of Wayne, through cuts and around curves, without the foreman of the crew, or any member thereof by his direction, being ahead with flag or other signal to give the hand car and its occupants warning of danger by reason of approaching trains or otherwise, and the absence of such flagging was known to said Turner, and he still without objection remained on the hand car—then, under such circumstances, the said Pearly Turner accepted and assumed the risk of encountering or coming in contact with any extra train or wild engine that might be on the track, and which could be escaped by such flagging; and under such circumstances, if the jury find that the neglect of the foreman to flag was the proximate cause of the injury to Pearly Turner, they can not find for the plaintiff, but must return a verdict for the defendant . No. 2. If the jury find from the evidence in this case that the intestate, Pearly Turner, for two or three months prior to his death, had been in the service of the defendant, under Foreman Alley, working upon the defendant's railroad track putting in cattle guards, and to his knowledge the railroad company during that time had been daily running on said road divers extra trains, without previous notice, back and forth from one point to another

at irregular hours of the day, and that said Turner, without compulsion, got upon the hand car on the morning of January 28, 1892, knowing that his foreman, Alley, had no knowledge or opportunity of knowledge that extra No. 2 would be approaching that morning, and also knew that his said foreman had not flagged around the curve where the accident occurred, then the jury are instructed that the said Turner assumed the risk of a collision between his hand car and any extra which might meet them on said curve." And the plaintiff objected to the giving of said instructions, and each of them, and the court sustained said objection, and refused to give said instructions, or either of them, in the above form; to which opinion of the court in refusing to give said instructions and each of them, the said defendant again excepted. Thereupon the court modified each of said instructions by adding to No. 1 the following language: "Provided the jury further believe from the evidence that Pearly Turner had knowledge of the duties of said foreman Alley to do such flagging, or cause it to be done, and if the jury believe further from the evidence that Pearly Turner had knowledge at the time of the accident that said Alley had not so done his duty." And by adding to No. 2 the following language: "Provided the jury further believe from the evidence that Pearly Turner had knowledge that it was the duty of said foreman to do or have done such flagging." And the court then gave each of said instructions as so modified.

The modifications made by the trial court to these instructions come clearly within the rule as decided by this Court in the case of *Gregory's Adm'r* v. *Railroad Co.*, 37 W. Va. 606 (16 S. E. Rep. 819). The mere fact that a part of the modification is a repetition of what is already contained in the instruction would not vitiate it to the prejudice of the defendant. These instructions were based on the contributory negligence of the deceased, who could not be considered as waiving the discharge of a duty which the foreman owed him as the agent of the defendant, unless he had knowledge of the duty. The court did not err in so modifying the instruction, but it did err in giving the instruction as modified, but not to the prejudice of the defendant.

The first instruction contains this language: "Through cuts and around curves, without the foreman of the crew, or any member thereof by his direction, being ahead with flag or other signal to give the hand car and its occupants warning of danger." There is no evidence in this case that justifies this part of the instruction, as it does not appear that any other cuts and curves were passed that morning where the foreman neglected his duty to flag but the one where the collision occurred, and the jury can not infer from one proven act of negligence that other similar ones occurred. Both instructions are vicious for another reason. They fail to take into consideration the age, capacity, and experience of the deceased. 3 Wood R. R. (2d Ed.) § 380, p. 1754, lays down the law as to the employment of minors as follows: "The mere fact that a servant is a minor does not of itself render the master under any greater obligation to him than to older employes. When he enters the service he assumes all the risks incident to it, and no exception to the general rule in this regard is made in his favor." And in Wood, Mast. & Serv. p. 714, § 349: "Where the servant has equal knowledge with the master of the danger incident to the work, he takes the risk on himself if he goes on with it, but this only applies where the servant is of sufficient discretion to appreciate the dangers incident to the work. Where there are latent defects or hazards incident to an occupation, of which the master knows or ought to know, it is his duty to warn the servant of them fully, and, failing to do so, he is liable to him for any injury that he may sustain in consequence of such neglect; and this rule applies even where the danger or hazard is patent, if, through youth, inexperience or other cause, the servant is incompetent to fully understand and appreciate the nature and extent of the hazard." In the case of *Railroad Co. v. Fort*, 17 Wall. 558, a suit for damages sustained by a boy sixteen years of age, Justice Davis, rendering the decision of the court, says: "If the order had been given to a person of mature years, who had not engaged to do such work, although enjoined to obey the directions of his superior, it might with some plausibility be argued that he should have disobeyed it, as he

must have known that its execution was attended with danger; or, at any rate, if he chose to obey, that he took upon himself the risks incident to the service. But this boy occupied a very different position. How could he be expected to know the peril of the undertaking. He was a mere youth, without experience, and not familiar with machinery. Not being able to judge for himself, he had a right to rely on the judgment of Collett, and doubtless entered upon the execution of the order without apprehension of danger." In this case the decedent, a minor sixteen years of age, of average intelligence for one of his age, when he entered the service of the company defendant as a track hand assumed all the ordinary risks incident to that service, and the defendant was bound to accord to him the same protection as to unexpected or extraordinary hazards as it did to adult employes. When it seeks to be excused from culpable negligence on its part in that it failed to discharge its duty towards him in warning him of an unusual latent and dangerous hazard, on the theory that he acquiesced in its negligence and assumed the risk of hazard, his age, experience, and capacity, if not legally conclusive, are potent factors to be considered by the jury in arriving at a verdict. The defendant's instructions entirely ignore these factors, and propound the law as though he were an experienced adult, with all his powers of mind and body fully developed. If he had signed a written contract or deed waiving the discharge of the defendant's duties towards him in the most solemn and formal manner, the law would have held it void, and if he had entered into a parol agreement to the same effect, the law would have disregarded it; and yet the jury is instructed that they may find from his acts, knowledge and conduct that he released the defendant's legal duty towards him, and assumed the risk occasioned by the defendant's negligence, although at the time he was acting in obedience to the defendant's orders. Such a construction of the law is contrary to reason and experience. Boys of sixteen seldom stop to consider any danger to which they may be exposed, but rely implicitly on the superior judgment of those in authority over them. And is it not right that they should do

so, especially when any insubordination on their part subjects them to condign punishments? Is not such the teaching of both the Scriptures and the law? Shall we say in the language of the defendant's counsel, "Common sense would teach him, his own safety would require, and ordinary prudence dictate," that he should not place confidence in the superior intelligence, experience and knowledge of the trusted agent of the defendant, his superior officer, but that he should depend on his own youth, inexperience and lack of knowledge? The defendant would never countenance such a rule as this in its business. It would take a very strong case to make an infant employe contribute to his master's negligence by obeying his directions, which result in the former's death. Certainly the case now presented is not such a case, and therefore the defendant's instruction, though modified, should not have been given.

*Third.* The conclusions thus reached virtually dispose of the third assignment of error, which is to the refusal of the court to set aside the verdict as contrary to the law and evidence. The defendant's argument under this head is mainly as to the question whether the engineer sounded the whistle and caused the bell to ring, as required by the rule of the defendant, which is in these words: "Extra and delayed trains must sound the whistle frequently on approaching curves, and before passing obscure places." The engineer and other trainmen testify that the whistle sounded and the bell was rung just before and at the road crossing, about eight hundred feet from where the accident took place. The employes, not less than twelve in number, heard neither the whistle nor bell. This is established by their conduct, independent of their testimony, because if any of them had heard it it is safe to presume the accident would not have happened. Several other witnesses testified on the same subject. The jury had to weigh this evidence; for it is certainly conflicting and contradictory, depending entirely on the memories of the witnesses, their interest in the result of the trial, and other circumstances surrounding the case. But admitting that the whistle was sounded and the bell rung, as testified by the trainmen, can we say that it was a full compliance

with the rule of the defendant?   It certainly did not accomplish the result intended. It could warn no one whose ears it did not reach, and it appears to have been heard only by those in the immediate neighborhood of the engine.   Why the whistle was not sounded in the immediate neighborhood of the curve—the point of danger—no explanation is given. The engineer says the whistling at the road crossing, eight hundred feet away, was intended for the curve, because he expected some carpenters along on a truck or hand car, and yet he did not sound the whistle frequently, as the rule requires, but actually ran into the very carpenters he was expecting, without giving them any warning of his approach.   The jury were certainly justified in finding that the engineer, as well as the foreman, was guilty of negligence in not obeying the rules of the defendant.   The defendant insists that if the engineer and foreman were guilty of negligence, the boy was guilty of contributory negligence; that "his conduct under the circumstances was such as no man with a grain of sense or a particle of prudence would have been guilty of."   Such language as this might be properly used toward the offending foreman or the other adult hands, seven in number, who were along with him, but is certainly hardly appropriate when applied to this poor, unfortunate boy, who in his earnest desire to serve his master in an acceptable manner, lost his life whilst strictly obeying the orders of his master, as represented by its foreman.   He not only had the right, but was in duty bound to rely upon the care and superior knowledge of the trusted agent of his employer, under whose protection and charge he was placed.   Wood Mast. and Serv. § 366; 4 Am. & Eng. Enc. Law, 42-61, note 1.   This is a much stronger case in this respect than the *Fort Case*, referred to above.   This boy was not sent into a dangerous place, but by the conduct of his superior "was lulled into a sense of perfect security," and then led into unexpected danger, and when the death trap is reached, the superior, by reason of his experience, activity, and good fortune, saves himself, and permits the innocent victim of his negligence to perish.   For his confidence and obedience, the boy paid his life; for its negligence, the master should respond in damages.

*Fourth.* The last error assigned is that the damages allowed are excessive. Section 6, Chapter 103, of the Code, provides that: "In every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars." By the enactment of this law the legislature, as it had the power to do, gave the jury absolute control over the question of damages, within the limit fixed. The courts are clothed with no authority to disturb their findings, but are inhibited from so doing as positively as though plainly expressed in the language of the statute. They can neither enact, repeal, vacate, or amend legislative enactments within the limitations of the constitution, within which the legislature is supreme and the judiciary powerless. It has been held by the Court of Appeals of Virginia, in construing a similar statute, from which our statute was taken, that the measure of damages in the case of a man's death is not limited to the pecuniary value of his life to his estate; but may be exemplary, punitive, and given as a *solatium.* *Matthews* v. *Warner,* 29 Gratt. 576; *Railroad Co.* v. *Noell's Adm'r,* 32 Gratt. 394. This boy, according to the evidence, was strong, healthy, sixteen years of age, fatherless, and with a widowed mother. To hold that such a boy's pecuniary value to his estate by any table of probabilities was worth less than four thousand five hundred dollars would require very close calculation, exclusive of the cost and expense of litigation. But it is certainly evident that it was not the intention of the legislature for the jury to be limited in their finding to the probable pecuniary loss. The law was to operate as exemplary and punitive, as well as compensatory, but not penal, in any proper case. *Ricketts* v. *Railway Co.,* 33 W. Va. 433 (10 S. E. Rep. 801.) Any damages imposed in such cases are a forfeiture for the wrong done, occasioned by the neglect of a legal duty, and, so far as the aggressor is concerned, are intended to be corrective, in tender consideration of human life. A verdict of four thousand five hundred dollars will illy remunerate a widowed mother for the loss of a strong, healthy, industrious son of average intelligence, sixteen years of age, yet it is to be hoped that it may have the effect to either deter the defendant and other

similar corporations from employing minors in dangerous occupations, or to cause their agents to be more vigilant in protecting such youthful employes from the culpable negligence of those having them in immediate charge, and to whom they owe the duty of obedience.

In any view of this case, the damages found are not excessive, and no error has been committed to the prejudice of the defendant, and the judgment is therefore affirmed.

## ON REHEARING,

In their able re-argument of this case, defendant's counsel present six points for further consideration. '

"*First.* The engineer and fireman of the special engine were fellow servants of the decedent, a section hand on the track." This depends entirely upon the nature of the act or duty, as it relates to the decedent, they were called upon to discharge at the time of the accident. In some respects they were his fellow servants, but in giving him warning of the use of the track by a special train, they were discharging the non-assignable, personal, positive, or superior duty of the master, the defendant, in its corporate capacity. It has been well said that it would be a 'monstrous doctrine to hold that a railroad company could frame such schedules as would inevitably, or even probably, result in collisions and loss of life. *Lewis* v. *Seifert,* 116 Pa. St. 647, 11 Atl. 514. Having prepared and promulgated its schedule, it must adhere to it, and if it makes a change or violates such schedule, it is its positive duty to notify all who may be affected thereby of such change. When, in contravention of its schedule, it sends a "wild engine" over its track unexpectedly, it is in duty bound to warn all its employes who are rightfully on and using the track about its business, whether in charge of engine, train, or hand car, of the change in the schedule, and if it entrusts this duty to others, by bell, whistle, or otherwise, it makes such others its vice principals to that extent, and if they fail to discharge this duty, the company must answer for their negligence unless it be shown that the injured person contributed thereto. For instance, if the company had failed to notify Foreman Alley, by bell, whistle, or other-

wise, of the presence of a special train or obstruction on the track, and he had been injured thereby, he could recover, unless the defendant showed that he was under express instructions to be on the lookout for such special trains, and as a matter of precaution, to flag around curves and through cuts. In such case he would fail, not because of being a fellow servant with the engineer, but from contributing to his negligence. The company must protect its employes from all dangers created by itself or its authorized agents or agencies which such employes can not themselves foresee, or, by the use of ordinary prudence, avoid. For it must furnish them a safe place to work. To send "wild engines" and trains without any manner of warning or precaution over tracks already rightfully occupied by other employes is negligence in the highest degree criminal, in utter disregard of human life or limb, and worthy of the severest penalties the law can possibly inflict; and it is made less criminal by the degree of precaution taken to give the necessary warning, and only becomes excusable when the measures adopted are sufficient to protect such employes from threatened danger, provided they are free from fault themselves. It is not necessary to refer to decisions of other states to sustain or refute this doctrine, as the law is thus fully settled beyond controversy by numerous decisions of this Court, to wit: *Flannegan* v. *Railway Co.*, 40 W. Va. 436 (21 S. E. Rep. 1028; *Haney* v. *Railway Co.*, 38 W. Va. 570 (18 S. E. Rep. 748); *Core* v. *Railroad Co.*, 38 W. Va. 456 (18 S. E. Rep. 596); *Johnson* v. *Railway Co.*, 38 W. Va. 206 (18 S. E. Rep. 573); *Beuhring's Adm'r* v. *Railway Co.*, 37 W. Va. 502 (16 S. E. Rep. 435); *Daniel's Adm'r* v. *Railway Co.*, 36 W. Va. 397 (15 S. E. Rep. 162); *Criswell* v. *Railway Co.*, 30 W. Va. 798 (6 S. E. Rep. 31); *Madden* v. *Railway Co.*, 28 W. Va. 610; *Cooper* v. *Railroad Co.*, 24 W. Va. 37. In these, and many others, this Court is in accord with the decisions of the Supreme Court of the United States in the cases of *Randall* v. *Railroad Co.*, 109 U. S. 478 (3 Sup. Ct. 322); *Railway Co.* v. *Ross*, 112 U. S. 377 (5 Sup. Ct. 184); *Railroad Co.* v. *Baugh* (13 Sup. Ct. 914); 54 Am. & Eng. Ry. Cas. 328. See note on page 364, 54 Am. & Eng. Ry. Cas., where the doctrine is stated and authorities cited.

"*Second.* The plaintiff's decedent was guilty of contributory negligence." The duty of proving contributory negligence is on the defendant. To do this defendant proved that its foreman had been guilty of negligence in not flagging around the curve, and that by the rules of the company he was required to so do; so far only proving a further breach of its duty toward the decedent, making it liable under the decision of *Criswell* v. *Railway Co., supra,* for all damages sustained. It then showed that the deceased had been working for the company five or six months, and that he had often been sent to flag around curves, and that the foreman had been flagging around curves when he "was looking for a train or anything." When he knew there was no train, he did not flag. This is the only evidence tending to show contributory negligence. No knowledge of the rules of the defendant or of the duties of the foreman were brought home to the deceased, except what might be presumed from his limited observation and experience. As is said by Judge Green in the *Criswell Case,* he had the right to rely on the foreman's judgment and conduct, and that he would take every necessary care and precaution to protect him from unnecessary and unexpected dangers, and in doing so he did not waive the company's duty toward him, nor did he assume any dangerous risks of which he had no knowledge or information. How did the deceased know that the foreman was not doing his duty strictly? The evidence fails entirely to answer this question. As Judge Brannon says in *Gregory's Adm'r* v. *Railroad Co.,* 37 W. Va. 613 (16 S. E. Rep. 819): "Before we can say that the plaintiff's action shall be defeated by the mere existence of a rule, we must find that he had knowledge of it." The foreman himself was ignorant of the extent of the rule, and often neglected to observe it. Certainly his hands, who were not required to know or furnished with a copy of it, should not be presumed to have a more extensive knowledge than their foreman, for whose government it was made, and who was expected to be familiar therewith for the instruction and protection of those under him.

Right in this connection is the defendant's third point, to wit:

"*Third.* Turner, the party killed, was sixteen years of age, and having passed the age of fourteen, he was presumed to have had sufficient capacity and understanding to be sensible of danger and of having the power to avoid it, and this presumption should stand until it is overthrown by proof of the absence of such discretion and intelligence." The defendant's counsel apparently misunderstand the law as propounded in the opinon in relation to the age of the decedent, and that is that it is the duty of a master who knowingly employs a youthful servant, and subjects him to the control of another servant, to give him such warning of the dangers of his employment as his youth and inexperience require. In this case it is not shown that this boy was given any instruction as to the dangerous hazard of riding on this car around this curve without flagging. On the contrary he was led into the very jaws of death by the man who should have warned him and given him proper instruction. There is a great difference in the law as applied to the case of a minor who acts in disobedience to or without orders and one who acts in obedience to the commands of those having authority over him. In the former case the rule relied on by the defendant, and the authorities cited in support thereof, may apply, but in the latter case they have no application, but the rule is entirely different. A minor can not be expected to set up his opinion, however mature, against the judgment and experience of those maturer and older, to whom he is given in charge. But he is taught the lesson of obedience from his cradle, and he is required to respect the commands and pay deference to the judgment of his elders until legally emancipated at the age of twenty one years. And it would be an extreme case in which a minor should be held guilty of contributory negligence in obeying the orders of his foreman, representing his master. This is no such case, but is in line with the following cases, yet stronger than they: *Railway Co.* v. *Peregoy,* 36 Kan. 424 (14 Pac. 7); *Dowling* v. *Allen,* 74 Mo. 13; *Hill* v. *Gust,* 55 Ind. 45. In the case of *Railway Co.* v. *Bridges,* 92 Ga. 399 (17 S. E. Rep. 645) it was held that "the evidence showing affirmatively that the plaintiff was injured while engaged in the line of his

duty, under the orders and in the immediate presence of the
'boss' to whose orders he was subject, and the injury was the
result of negligence attributable to the company—either
the sole negligence of the 'boss' or the joint negligence of
him and of absent officers or employes with whom he should
have co-operated in so regulating the movements of his hand
car as to prevent a collision between it and a train—a re-
covery by the plaintiff would be defeated only by fault on
his part amounting to rashness or recklessness in obeying
under the circumstances the orders of the boss." It is im-
possible to say in the light of the evidence that this boy
was guilty of rashness or recklessness in obeying the orders
of his foreman.

"*Fourth.* The former opinion herein recognizes, permits
and commends the doctrine of punitive damages, contrary to
the former adjudications of this Court." The question of
punitive damages does not properly arise in this case. No
instructions as to the amount of damages were asked or
given, but the jury was left free to find under the statute
such damages as they should deem just and fair. The doc-
trine of punitive damages should be the same in cases where
death ensues from acts of negligence as where it does not
ensue, in accordance with the law as given in the case of
*Mayer* v. *Frobe,* 40 W. Va. 246 (22 S. E. Rep. 58) which over-
rules *Pegram* v. *Stortz,* 31 W. Va. 242 (6 S. E. Rep. 485) on
which the defendant mainly relies.

As to circumstances under which corporations would be
subject to the infliction of punitive damages, see *Ricketts* v.
*Railway Co.,* 33 W. Va. 433 (10 S. E. Rep. 801); *Downey* v.
*Railway Co.,* 28 W. Va. 732, 743·

"*Fifth.* The right given a jury by section 6 of chapter 103
of the West Virginia Code to assess damages not to exceed
ten thousand dollars, wherever the death of a person has
been caused by a wrongful act, is not a right that it may be
exercised arbitrarily, but the exercise thereof is always sub-
ject to proper correction and control by the court, under
the established rules of law." The fifth point of the syllabus
as propounded in this case, relates only to the amount of the
verdict, and is simply to the effect that there being no other

question of law or evidence presented, the court can not disturb the verdict of the jury as either too great or too small for the very reason that the legislature, as it had the right to do, has lodged with the jury the sole power to determine the amount of the damages, and for the court to interfere with this power is to usurp legislative functions, and under the pretense of legal construction, to repeal, alter, or change a plain legislative enactment, about which there can be no two distinct and different opinions. That this point of the syllabus may be easier of comprehension, and leave no question of doubt within proper limitations, it has been deemed advisable to add the following words: "Unless the verdict evinces passion, prejudice, partiality or corruption on the part of the jury." *Battrell* v. *Railway Co.*, 34 W. Va. 232 (12 S. E. Rep. 699). Nothing of this kind, however, is claimed.

But the only reason relied on is as given in defendant's last point, to wit: "(6) In the case at bar, the evidence failed to furnish any proper data upon which to base a verdict or judgment." A boy sixteen years of age, robust and healthy, a good worker, employed as a track hand or day laborer by the defendant; a widowed mother who appeared and testified before the jury. From these facts the inferences naturally follow: That he was receiving the ordinary wages of a laborer of his class; if he was not, the defendant employed him, and could have so shown. That his mother depended on his wages, for if not, he would not have been at work; the minor sons of the wealthy, or even the well to do, at sixteen years never labor as repair hands. These are both matters of common observation, within the knowledge and experience of the ordinary juryman. *City of Chicago* v. *Hesing*, 83 Ill. 204. The amount of damages is a question of fact, and not of law. *City of Joliet* v. *Weston*, 123 Ill. 641 (14 N. E. Rep. 665); *City of Salem* v. *Harvey*, 129 Ill. 344 (21 N. E. Rep. 10). While courts are supposed to know and administer the law, the jury determine the facts. With their determination the court ought not to interfere unless it is in a form to shock the understanding and impress no dubious conviction of their prejudice and passion on the mind of the

court.   Grah. & W. New Trials 452; *Zinc Co.* v. *Black's Adm'r*, 88 Va. 300 (13 S. E. Rep· 452); *Trice* v. *Railway Co.*, 40 W. Va. 271 (21 S. E. Rep. 1022).   There is nothing in this case "to warrant the belief that the jury must have been influenced by partiality, prejudice, or passion, or have been misled by some mistaken view of the merits of the case" *Boster* v. *Railway Co.*, 36 W. Va. 318 (15 S. E. Rep. 158).

For the foregoing reasons, the former conclusion arrived at is ratified and affirmed.

-------

ENGLISH, JUDGE (*dissenting*):

I can not concur with the opinion expressed by the majority of the Court in this case, for the following reasons:   The record discloses the fact that the plaintiff's intestate was a laborer in the employ of the defendant, and at the time he received the injury which caused his death was riding upon a hand car on his way to his work.   He was sixteen years of age, of "tolerably fair size, and a good worker."   So far as appears from the testimony, he was performing the labor of a man, and receiving a man's wages.   At that age he was as capable of taking care of himself, as a young man eighteen, twenty or twenty two years of age, and it appears to me an injustice would be done to discriminate against boys who were capable of performing the labor of a man by holding that a greater responsibility or liability rested upon their employers in protecting them from injury or accident while engaged in their employment than is required by such employer in reference to those who have arrived at the age of twenty one years.

I can not believe that the law intends that when a young man presents himself as an applicant for work, before employing him the employer must stop and inquire whether he is twenty one years of age, or if he does not so inquire, that any greater responsibility devolves upon him as to such young man than would if he was twenty one or twenty five years of age.

In the case of *Nagle* v. *Railroad Co.*, 88 Pa. St. 35, Judge

Paxton, in delivering the opinion of the court, says: "The law fixes no arbitrary period when the immunity of childhood ceases and the responsibilities of life begin. For some purposes, majority is the rule. It is not so here. It would be irrational to hold that a man was responsible for his negligence at twenty one years, and not responsible a day or a week prior thereto. At what age, then, must an infant's responsibility for negligence be presumed to commence? This question can not be answered by referring it to the jury; that would furnish us with no rule whatever. It would give a mere shifting standard, affected by the sympathies or prejudices of the jury in each particular case; one jury would fix the period of responsibility at fourteen, another at twenty or twenty one years. This is not a question of fact for the jury; it is a question of law for the court." After citing several authorities, as to the age when a guardian may be selected, and as to when he may be guilty of crime, he says: "We have thus seen that the law presumed that at fourteen years of age an infant has sufficient discretion and understanding to select a guardian, and contract a marriage; is capable of harboring malice and taking human life under circumstances that constitute the offense murder. It therefore requires no strain to hold that at fourteen an infant is presumed to have sufficient capacity and understanding to be sensible of danger, and to have the power to avoid it. And this presumption ought to stand until it is overthrown by clear proof of the absence of such discretion and intelligence as is usual with infants of fourteen years of age."

The witness Alley shows that this young man was not without experience, that he had been working on the road before he commenced working for him, and in my view of the case, he occupied precisely the same attitude as any other hand on the road, and in entering the service of the defendant he assumed the risks incident to his employment to the same extent precisely, no greater and no less, than others engaged in performing the same services.

At the time the accident occurred, the plaintiff's intestate was on his way to work, riding on a hand car, and, al-

though he was aware that no flag had been sent in advance by the foreman, yet he remained on the hand car, and took the risk of going around the curve into the deep cut, and thus met his death. It does not appear that deceased was ordered to get on the hand car by any one. It was his voluntary act; it was his means of locomotion towards his work. He could have walked through the cut as well as to have gone on the hand car. The defendant had nothing to do with causing or requiring him to select this mode of traveling to his work. If then, the fact of his being on the hand car contributed to his death, he voluntarily adopted that mode of travel, and thus contributed to his misfortune. He went thus with full knowledge that the flag had not been sent forward.

The declaration avers that the injury was caused by defendant running its engine around a sharp curve and through a deep cut without ringing a bell or blowing a whistle, or giving any warning whatsoever against said hand car. As to ringing the bell, however, and sounding the whistle, the testimony is overwhelming that both were done, and the injury is not occasioned by the failure to use these precautions, and it does not appear that any fault could be attributed to the defendant in the management of the engine, and, the decedent having voluntarily gone into this cut without any precaution, I think he was guilty of contributory negligence, and could not recover.